12347

VIRGINIA-CAROLINA CHEMICAL CO. v. WELLBROCK *ET AL.*

(141 S. E., 103)

1. Time—Presumption is that Reference to Certain Year in· Statute Means Calendar Year.—Where reference in statute is made to a certain year, the presumption is that calendar year is meant, in absence of express legislative intention.

2. Evidence—Judicial Cognizance Will be Taken That Persons Taking Crop Mortgages Refrain From Taking Mortgage Until Beginning of Calendar Year, Giving Universal Intrepretation to Law Thereon (Civ. Code 1922, § 5629).—Supreme Court will take judicial cognizance of fact that persons taking mortgages on crops as security for advances or other indebtedness refrain from taking such mortgages until beginning of calendar year, giving a universally acted on interpretation of Civ. Code 1922, § 5629, relative thereto.

3. Chattel Mortgages—Person Taking Crop Mortgage in 1923 Acquired no Rights, as Against Subsequent Mortgagee, as to Crops Raised in Following Year (Civ. Code 1922, §5629).—Person taking crop mortgage for fertilizer furnished in 1923 *held*, under Civ. Code 1922, § 5629, to have acquired no rights as to crop grown during following year, as against subsequent mortgagee, particularly in view of Act March 14, 1925 (34 St. at Large, p. 91), § 1, and Act Feb. 10, 1927 (35 St. at Large, p. 55), § 1, justifying interpretation of clause "during the year in which such mortgage was given" appearing in first-named section, as meaning calendar year.

Before Grimball, J., Charleston, July, 1926. Reversed and remanded.

Action by the Virginia-Carolina Chemical Company against J. C. Wellbrock and others, trading as the J. C. Wellbrock Exchange. From an order striking the affirmative defense in the answer, defendants appeal.

*Mr. James Allan,* for appellant, cites: Sec. 5629, *Code not in derogation of common law; strictly construed:* 11 C. J., 434; 10 S. C., 452; 2 So., 534; 52 S. E., 616; 129 Pac., 1046; 1 R. C. L., Sec. 8; 27 S. C., 44. *A party making advances to one engaged in the cultivation of the soil must comply strictly with the conditions of the act to secure advancements for agricultural purpose:* 3 S. C., 46; Acts 1925, 91. *"Year":* 52 Ala., 124, 145; 8 Words & Phrases (1st), 7552, 7553; 25 Miss., 598, 605; 40 U. S., 162; 73 N. W., 576, 578; 43 Mo., 479; 68 S. C., 411; Sec. 570, Code Civ. Proc.; 70 Ga., 674, 676; Sec. 5692, Code. *Cases distinguished:* 107 S. C., 258. *Must be regarded as an agricultural lien:* 11 C. J., 399; 23 S. C., 282; 20 S. C., 17; 4 S. C., 21; 32 S. C. L., 121; 19 S. C. L., 291. *Same, enforced only as set out in statute:* 59 S. C., 52, 56; 15 S. C., 548; 11 S. C., 90; 16 S. E., 713. *Preferred lien on seed potatoes:* Sec. 5700, Code. *Same, good on crop therefrom:* 1 R. C. L., 1071. *Power coupled with an interest:* 2 C. J., 533; 2 Speers, 527. *Entitled to reimbursement for advances made in preservation of commodity having lien on:* 2 C. J., 1009; Id., 739; 25 C. J., 363; 37 Cyc., 467.

*Messrs. Mitchell & Horlbeck,* for respondent, cite: *"Year":* 87 S. W., 291, 294; 112 N. W., 377, 378; 68 S. C., 411; 123 S. W., 86; 72 Pac., 408; 106 Pac., 606, 609; 107 N. W., 1090, 1092; 19 Pac., 487; 15 Peters, 141, 160. *"Raised during year":* 107 S. C., 258. *Crop not in existence at time of mortgage:* 11 C. J., 434, 437. *In equity the mortgage charges the property as soon as it is acquired by the mortgagor with an equitable lien which will prevail*

*against a subsequent judgment or attaching creditor:* 14 S.
C., 112; 10 S. C., 452; 33 S. C., 451, 475; 129 S. C., 58,
65; 72 S. C., 25, 32. *Chattel mortgage distinguished from
agricultural lien. Remedy of seizure not exclusive:* 14 S.
C., 40, 41; 15 S. C., 548; 59 S. C., 52, 56. *Agricultural
liens abolished:* 26 Stat., 178. *Statute relating to crop mort-
gages:* Sec. 5629, Code. *Provides no remedy; any remedies
legal or equitable are available:* 43 S. C., 459; 60 S. C., 103;
71 S. C., 127; 91 S. C., 121; 108 S. C., 361; 113 S. C.,
140. *Lien for advances on potato seed:* Secs. 5700, 5695,
5696, Code. *Recording is notice:* Sec. 5312, Code.

January 6, 1928.

The opinion of the Court was delivered by Mr. Acting
Justice Purdy.

This is an action brought by the plaintiff respondent
against the defendants appellants, in the nature of an ac-
tion to recover damages for the appropriation by the appel-
lants of certain crops, demanding of the appellants that they
account for such crops, the action growing out of the fol-
lowing state of facts:

The respondent furnished to one C. E. Cope fertilizers
amounting to $1,647.60 and C. E. Cope made a mortgage
(date not given) to the respondent, which was recorded on
December 1, 1923, in Beaufort County, where the mortgagor
resided, and purported to give a lien upon certain crops of
potatoes, lettuce, and beans described in the mortgage,
"growing or to be planted or grown by or under the said
C. E. Cope during the year 1923-1924," on the tract of
land in Beaufort County, described in the mortgage. Other
than this, the mortgage is not set forth in the record.

Half of the fertilizer was shipped in December, 1923, and
the remainder in January, 1924. On January 31, 1924,
the appellants entered into an agreement with Cope, under
which agreement they were to handle and market the crop

made upon the same land, getting a commission for so doing, and they were to advance to Cope, and did advance to him, seed potatoes for planting the land, and Cope became indebted to the defendants in the sum of $1,185.50, for which they took his note.

Cope planted the crop on the land, but showing an indifference about gathering it, the appellants took charge of the crop, furnished the barrels for shipping, bore the expense of gathering and harvesting, and rendered an account of sales to Cope, showing a balance of $42.67, which was credited on the note of Cope to the appellants.

The respondent claimed the crops under its mortgage and by its complaint sets out the furnishing of the fertilizer, the making and recording of the mortgage, and alleges that the appellants received several hundred barrels of potatoes, sold them, and retained the proceeds of sale, and that they had failed to account for and pay over the proceeds of sale to the respondent, to which it alleged that it was entitled, and prayed that the defendants be required to make an accounting of the crops of Cope, taken and received by them, and the proceeds thereof, and pay over the same to the plaintiff.

The defendants by their answer set up the agreement between themselves and Cope, the furnishing of the seed potatoes, Cope's indebtedness to them, their agreement with Cope to handle the crop, and set up by way of defense that the seed for such crop was furnished after January 31, 1924, and that the crop was planted, raised, and harvested in that year, and not in the year 1923, and that the respondent had no interest in, or lien upon, the crop.

There were several defenses set up in the answer, which is quite long. A motion was noted by respondent's attorneys, before Judge Grimball, for an order "striking out of the answer of the defendants all of the defense set up therein as a further and affirmative defense," as constituting no defense to the cause of action set up in the complaint.

Judge Grimball, on hearing the motion, considered it at great length, and particularly on the authority of *Owings v. Shaw,* 107 S. C., 258; 92 S. E., 474, sustained the motion, and held that the mortgage given by Cope to the respondent constituted a valid lien upon the crops described in it, superior to any lien or claim of the appellants, and ordered that the affirmative defense in the answer be stricken out, and this appeal comes up from such order.

There are twelve exceptions, but as we view the matter, they involve a single issue, viz.: Whether the mortgage made by Cope to the respondent, recorded December 1, 1923, created a lien upon the crops to be grown by Cope during the year 1924.

Both the appellants and respondent have filed most interesting arguments showing the history and progress of chattel mortgages in this and other jurisdictions, at common law and under the statutes; but since it is conceded that a mortgage of a growing crop may be made before the crop is planted, a discussion of the collateral matters relating to such mortgages might be interesting, but it is not necesasry to enter into such discussion, since there is one issue only, and that is whether the mortgage, which was made in this case in the year 1923, became effective upon the crops to be grown in the year 1924. Nor is it necessary in settling this to discuss whether this action can be maintained. This phase of it is not in issue, and if it were in issue, the decisions amply sustain the right of the respondent to sue.

If the lien of the respondent extended to the crops grown in 1924, then it must recover. If the respondent had no such lien, then the appellants here did it no wrong, and it must fail in its efforts to recover. The right to recover depends on the statutes relating to the subject, and it is contended by the respondent that the Statute of this State then in force has been interpreted by this Court and against the contention of the appellants.

The following references will show the statutes relating to the subject:

Code of 1922, Vol. 3, §5629:

"No mortgage of any crop or crops shall be good and effective to convey to the mortgagee any interest in any crop or crops other than the crop or crops to be raised during the year in which said mortgage is given, and unless the land whereon said crop or crops are to be raised shall be described or mentioned in said mortgage, which said mortgage, when so taken, when indexed or recorded as required by law, shall constitute a lien on the crops therein described in preference to all subsequent mortgages on said crop or crops."

This Act was amended as aproved March 14, 1925 (Acts 1925, p. 91), and in Section 1 we find this:

"Lien upon Crops Maturing in Year after Planting Not Defeated—Conditions."

After the enacting words, the following is added to Section 5629:

"Provided, the provisions of this Act shall not be held to defeat any lien in writing given over a crop or crops of truck or grain, planted or to be planted in one year and maturing in the ensuing year, if such crop or crops of truck or grain shall be specifically described in such instrument of writing with the name of the product or products and the year of planting set forth in such description, as well as the crops to be raised."

On February 10, 1927, Acts of 1927, p. 55, § 5629, and this proviso as above set forth were repealed in their entirety by the following Act:

"An act to provide for securing indebtedness incurred for an agricultural purpose by a mortgage of any crop, truck or fruit planted and/or grown within one year from the date of the execution thereof.

"Section 1. *Requisites of Validity of Mortgages of Crops, etc.*—Be it enacted by the General Assembly of the

State of South Carolina: That no mortgage shall be good and effective to convey to the mortgagee an interest in or create a lien on any crop, truck or fruit of whatsoever kind or description, other than that which shall be planted and/or grown within one year from the date thereof, and unless such crop, truck or fruit of whatsoever kind or description, together with the land whereon the same is or will be planted and/or grown shall be described therein; but a mortgage which complies with provisions hereof, when indexed or re-corded as required by law, shall constitute from its filing for record a prior lien on any crop, truck or fruit therein described, whether or not the same shall be at that time or thereafter planted and/or growing, in preference to a sub-sequent mortgage thereon and to the lien of any judgment or execution issued thereon."

It will be seen, therefore, in the outset, that the meaning of the words found in the first enactment in reference to the giving of mortgages on crops "during the year in which said mortgage is given" must be ascertained, in order to determine the rights of the parties to this action.

"Where reference is made to a certain year, the presumption is that the calendar year is meant." *Buchanan v. State Treasurer,* 68 S. C., at page 416; 47 S. E., 685. This is conceded by both the appellants and respondent, and there is no difference of opinion that this is the rule which should be adopted in the absence of any express legislative intention. It might be that the Legislature intends to establish a fiscal year running from one date to another, or a year or term of years from a certain date, but in the absence of any such intention, it seems to be clear that a calendar year is meant.

It is useless to multiply authorities from other jurisdictions, although many authorities are cited in the arguments in the case. Testing "during the year in which such mortgage is given," it is apparent that a calendar year was meant

by the Legislature. In fact, it is difficult to see how any other interpretation could be given.

The strongest reason existing for the necessity to make it otherwise is found in the Act of 1927, by which Act the Legislature has seen fit to make a change, and for reasons which must have appealed to the Legislature as being impelling, or else Section 5629 and its added provision would not have been repealed.

The different members of this Court can and will take judicial cognizance of the fact that persons making ·advances for agricultural purposes, based upon mortgages of crops as security, or taking mortgages upon crops as security for any indebtedness, refrain from taking such mortgages until the beginning of the calendar year, and the offices of the various clerks of Court in the State will show this, giving a universally acted upon interpretation of the Act.

The Legislature, in repealing the Act in 1927 and substituting in its place that the crop must be planted or grown within one year from the date of the mortgage, has also given its interpretation of the theretofore existing Statute on the subject.

But it is said that this Court, through Mr. Justice Hydrick, having given a different interpretation to the Act to that contended for by the appellants, the matter is no longer an open question. No such question was before the Court at that time, and we do not so interpret the opinion of the Court. Here is the question which the Court passed upon, in the language of Mr. Justice Hydrick, in *Owings v. Shaw,* 107 S. C., at p. 261; 92 S. E., 475, in the concluding sentence:

"The question here is not whether, in every case, a tenant, or his mortgagee, may enter and gather crops left in the field after termination of the lease; but it is whether a landlord, who knows that his tenant has mortgaged his crops, can

shorten the term by taking a surrender of the lease, and thereby defeat the rights of the mortgagee, without giving him reasonable time and opportunity to protect himself. Under the circumstances of this case, plaintiffs were entitled to enter and gather the cotton, and are entitled to the proceeds of the sale thereof."

The facts of that case (*Owings v. Shaw*, 107 S. C., 259; 92 S. E., 474) are, briefly stated, as follows:

One Counts leased land from Shaw, the defendant in that case, for a term of five years, the lease expiring on December 31, 1915. On February 3, 1914, Counts gave the plaintiffs his note for $20,000, due October 1, 1914, securing its payment by a mortgage of the crops (and other things) to be grown on Shaw's land, and to be harvested and delivered to the plaintiffs by October 1st of that year. The mortgage was recorded, the condition was broken; Counts owed the plaintiffs a balance of $13,000 and failed to gather a part of the cotton raised on the land in 1914, and in January, 1915, the plaintiffs undertook to gather what was left in the field, claiming it under their mortgage. Shaw objected, claiming that Counts had surrendered his lease and had turned over the cotton in the field in part satisfaction of the breach of the lease, or in part payment of the rent for 1915, and claiming that the plaintiffs had no right to gather the crop after the expiration of the year 1914. The crop was gathered and the proceeds held pending the litigation. The Circuit Court held that the plaintiffs, the mortgagees, were entitled to the money.

Shaw, the defendant, contended that Counts and the plaintiffs had entered into an accord and satisfaction, but it appeared that the condition of the agreement was that Counts should turn over to the plaintiffs all the property covered by the mortgage, which included the cotton in dispute. Counts failed to do this, and hence there was no satisfaction.

Now, says Mr. Justice Hydrick, further:

"Section 4106, Civil Code 1912, says that no mortgage of any crop shall be good other than of crops to be raised during the year in which the mortgage is given. Appellant contends that the word 'raised' means that the crops must be planted and harvested within the year in which the mortgage is given. That construction is too narrow. It would deny landlords and tenants the right to mortgage crops that are planted in the fall and mature the next spring. The purpose of the Act was to prevent the improvident act of mortgaging the crops of several years in advance.

"As between mortgagor and mortgagee, the crop need not mature and be harvested within the calendar year in which the mortgage is given. Therefore, as between plaintiffs and Counts, the mortgage was good, and gave plaintiffs the right to enter and gather the cotton any time after condition broken, even after the expiration of the year 1914."

Mr. Justice Hydrick goes on to say that Shaw could make no contract with Counts for the surrender of the term which would defeat the plaintiffs' rights, without first giving them reasonable time to gather the crops left in the field, and then goes on to conclude with the language first quoted from that opinion.

So it will be seen that the issue in this case is not the same as the issue raised in the *Owings v. Shaw* case. In this case, the mortgage was recorded on the 1st day of December, 1923. The potato crop out of which this issue grew was not planted until after the 31st day of January, 1924, and was harvested some time during the summer of that year. The crop was not raised in the year 1923. In the *Owings case,* as Mr. Justice Hydrick says:

"Appellant contends that the word 'raised' means that the crops must be planted and harvested within the year in which the mortgage is given. That construction is too narrow."

He goes on to say that the crop need not mature and be harvested within the calendar year in which the mortgage is given. There is absolutely nothing inconsistent with that case in the case at bar. That case can be construed as recognizing the year referred to in the Statute as the calendar year. Universal custom in taking mortgages throughout the State, of which this Court will take notice, has recognized that as the meaning of the Statute.

The Legislature amended the Statute in 1925, by adding the proviso referred to, and then, in March, 1927, repealed Section 5629 and fixed the period as one year from the date on which the mortgage is made, as will appear from the Act of 1927.

Taking all these things together, we say that Section 5629 had reference to the calendar year, the plaintiff respondent acquired no rights under its mortgage, and his Honor, Judge Grimball, was in error in striking out the defense set up in the answer of the appellants (as amended), and the order of Judge Grimball must be set aside, and the judgment of the Circuit Court reversed, and the case remanded to that Court, in order that the case may be disposed of in accordance with the views herein expressed.

Reversed.

Mr. Chief Justice Watts and Messrs. Justices Blease and Stabler concur.

Mr. Justice Cothran (dissenting) : I think that the Act under review in the opinion of Mr. Justice Purdy should be construed as referring to the planting or crop year, and not to the calendar year; consequently that the mortgage recorded in December, 1923, for fertilizers to be used in the crop of potatoes to be prepared for, planted, and harvested during the year 1923-1924, complied with the Statute.

Prior to the passage of the Act of 1891, now Section 5629, Vol. 3, Code of 1922, as is well remembered, it was

the common custom for chattel mortgages, in printed forms, to include the crops of several years in advance. As the Court says in the case of *Owings v. Shaw*, 107 S. C., 258; 92 S. E., 474:

"The purpose of the Act was to prevent the improvident Act [referring to the mortgagor] of mortgaging the crops of several years in advance."

I may add, with less charity to the mortgagee, that its purpose, too, was to put an end to a practice which was virtually peonage. Considering, then, the purpose of the Act, I cannot see that the construction that it did not refer to the calendar year, but to the planting or crop year, at all opened the door to the practices which it was intended to bar. The mortgagor evidently had such construction in view, for the mortgage covered the crop "growing or to be planted or grown by or under the said C. E. Cope, during year 1923-1924"; and the mortgage of the defendants followed the same form.

The mortgagor would hardly purchase fertilizers in the fall to be applied during the following year; and if it was intended to be applied as soon as purchased, the application was as important an element in the planting as the actual dropping of the seed, and should be considered as occurring within the planting or crop year.

If the Legislature intended to limit the time of the calendar year, it should have said so; and if it had, farmers who wished to sow grain in the fall or winter, to be harvested in the summer of the following year, would have been greatly embarrassed. Such legislation would manifestly not have been directed at the evil intended to be corrected.