Ray P. Sims *et al., Appellants,* v. The City of Bremerton *et al., Respondents.*[1]

*H. E. Gorman,* for appellants.

*W. A. Beakley,* for respondents.

Blake, J.—This appeal calls for the construction of that portion of initiative No. 94 (Laws 1935, chapter 2, p. 8) relating to the holding of elections to authorize a levy in excess of the millage limited by the act. The pertinent provisions of the statute, so far as we are now concerned, are:

"  .  .  .  the levy by any city or town shall not exceed fifteen mills:  .  .  .  *Provided*  .  .  .  that any  .  .  .  city or town shall have the power to levy

[1]Reported in 66 P. (2d) 863.

taxes at a rate in excess of the rate specified in this act, when authorized so to do by the electors of such . . . city or town by a three-fifths majority of those voting on the proposition at a special election, *to be held in the year in which the levy is made* . . .: *Provided,* That the total number of persons voting at such special election shall constitute a majority of the voters in said taxing district who voted for the office of governor at the next preceding gubernatorial election." (Italics ours.) (Rem. Rev. Stat. (Sup.), § 11238-1a [P. C. § 6882-77b].)

Pursuant to the provisions of the act, a special election was called and held in the city of Bremerton on December 7, 1936, at which more than three-fifths of the electors voted for a levy of seven mills "in excess of the rate specified" in the act. The total number of persons voting at the special election constituted a majority of the voters who voted for governor at the next preceding gubernatorial election. So, no question is raised as to these prerequisites to a valid authorization of the excess levy. Nor is any question raised as to the regularity in calling and giving notice of the election and the proposition to be submitted.

The sole question to be determined is whether the election was "held in the year in which the levy is made." The levy must be made on the first Monday in October, 1937, or within five days thereafter. Rem. Rev. Stat., § 9000-4 [P. C. § 890-4].

The decision turns upon the construction to be given the word "year," as used in the initiative measure. If it refers to the calendar year, then the excess levy is not authorized. If it means a year of three hundred sixty-five days, or twelve months, immediately preceding the making of the levy, then the excess millage is duly authorized. The trial court took the latter view and entered judgment accordingly.

Ordinarily, the term "year," when used in a

statute, is presumed to refer to the calendar year. *Virginia-Carolina Chemical Co. v. Wellbrock*, 143 S. C. 51, 141 S. E. 103. But if the context in which it is used indicates that the legislative intent was otherwise, the term may be construed to mean "fiscal year," a period of three hundred sixty-five days, or twelve months. *United States v. Dickson*, 40 U. S. 141; *Hops v. Poe*, 25 Cal. App. 451, 143 Pac. 1072; *Glasgow v. Rowse*, 43 Mo. 479; *In re The Providence Voters*, 13 R. I. 737; *Paetz v. State*, 129 Wis. 174, 107 N. W. 1090; *People ex rel. v. Escheman*, 63 Colo. 227, 165 Pac. 260; *United States v. Mabel Elevator Co.*, 17 F. (2d) 109; *Ex parte Hewlett*, 22 Nev. 333, 40 Pac. 96; *Bradley v. Esmeralda County*, 32 Nev. 159, 104 Pac. 1058, Ann. Cas. 1912C, 680.

In *United States v. Dickson, supra,* a statute was under consideration which provided for an "annual salary" for receivers of public money. In addition, a receiver was to be allowed commissions on moneys collected up to a certain amount in each year. Dickson's tenure of office commenced November 22, 1833, and ended July 26, 1836. The government contended that "year" meant the calendar year, and that he was entitled to commissions only from January 1st for the fractional year which he served in 1836. The court held otherwise. Through Mr. Justice Storey, it said:

"The compensation is measured by years. It is to be by annual salary, and by a commission not exceeding an annual amount. The words are, that 'they shall receive an annual salary of $500 each.' The natural interpretation of these words, certainly is, that the salary is to commence at the time when the service is to commence; and that they are to be contemporaneous with each other. We believe this to be the uniform interpretation of all laws of this sort; and that when any person takes office in an intermediate time between one quarter and another, the practice is, to pay him a proportion of the quarter's salary, accordingly; and if

he leaves office before the end of his official year, to pay him for the like proportion of the last quarter."

In the case of *In re The Providence Voters, supra,* the supreme court was called upon to construe a clause of the Rhode Island constitution making the payment of taxes "within the year next preceding" a prerequisite to the right to vote. The court said:

"Does the phrase 'in the year next preceding,' contained in the proviso, mean in the calendar year next preceding, or in the year in the sense of the twelve months next preceding. . . . Down to eighteen hundred and fifty-one, the construction prevailed that the year intended was the calendar year, and accordingly the citizen, in order to vote, was obliged by statute to pay his qualifying tax on or before the last day of the preceding calendar year. This construction was not received with satisfaction, and, in 1851, the statute was changed so as to allow the qualifying tax to be paid down to within three days of the day of voting. Since this alteration, for more than thirty years now, the statute, though it has passed through three general revisions, has remained substantially unchanged. The construction, therefore, that the year intended is not the preceding calendar year, but only the preceding twelve months, must be regarded as established."

In *People ex rel. v. Escheman, supra,* the court had before it for construction a statute which provided that owners of property in irrigation districts who had paid property taxes during the "year preceding" a district election were entitled to vote. Contention was made that the term referred to the calendar year, but the court rejected that view, saying:

"We think the words in the statute in question mean the preceding twelve months, and not the preceding calendar year. This construction appears better to effect the purpose of the act than would the other construction."

■  Now, considering the term "in the year" in the light of its context in the initiative and in the light of other statutes to which we shall advert, we think it is clear, for at least two reasons, that the word was not intended to refer to the calendar year. First, construed as meaning the calendar year, the period within which the election might be held would not amount to a year at all, but a period of somewhat less than nine months; second, cities of the third and fourth classes are required to hold their municipal elections on the "first Tuesday after the first Monday in December," (Rem. Rev. Stat., § 9165 [P. C. § 827]) while cities of the second class are required to hold their elections "on the first Tuesday after the first Monday of April." (Rem. Rev. Stat., § 9009 [P. C. § 717].)

It will be readily seen that, to construe the word "year," as used in initiative No. 94, as meaning the "calendar year," would not only place third and fourth class cities in a position of gross inequality with second class cities in respect to holding elections permitted by the proviso, but would be subversive (in so far as it affects third and fourth class cities) of the primary purpose of the act, namely, economy in governmental affairs. For, to hold that the word means "calendar year" would prevent third and fourth class cities calling a special election, under the proviso, to be held concurrently with the regular municipal election. In other words, in order to avail themselves of the privilege reserved in the proviso, third and fourth class cities would be compelled to hold special elections, at great additional expense, between January 1st and October 1st in the "calendar year" in which the levy is to be made, while cities of the second class could, at little additional expense, avail themselves of the privilege reserved in the proviso by holding special elections at the time of the regular municipal election.

In the light of the fundamental purpose of initiative No. 94, and with due consideration of the context in which the word "year" is used in the proviso, we think it clear that the word was meant to refer to a year of three hundred sixty-five days, and not the calendar year. The election authorizing the additional levy of seven mills was, therefore, "held in the year in which the levy is made."

Judgment affirmed.

MAIN, TOLMAN, HOLCOMB, BEALS, and ROBINSON, JJ., concur.

MILLARD, J. (dissenting)—I do not, personally, agree with the opinion. Also, as I see it, the record presents only an academic question on which no view should be expressed by me, judicially.

GERAGHTY, J. (dissenting)—A special election was called by the city of Bremerton for December 7, 1936, to authorize a tax levy of seven mills in addition to the levy authorized by the terms of initiative No. 9, known as the forty mill limit law, chapter 2, Laws of 1935, p. 8.

Since the 1936 city levy had been made in the preceding October, the excess levy authorized would have to be included in the 1937 levy, to be made in October of that year. The excess levy was approved by the requisite number of voters, and the question raised by this appeal is whether this authorization will sustain an excess levy to be made in October, 1937.

After enumerating the maximum levies permitted to the various political subdivisions of the state, initiative No. 94 provides:

"That any county, school district, road district, city or town shall have the power to levy taxes at a rate in excess of the rate specified in this act, when authorized so to do by the electors of such county, school district,

road district, city or town by a three-fifths majority of those voting on the proposition at a special election, to be held in the year in which the levy is made, and not oftener than once in such year, . . . ." (Rem. Rev. Stat. (Sup.), § 11238-1a [P. C. § 6882-77b].)

It seems to me the language of the proviso plainly implies that the authorizing election must be held in the calendar year in which the levy is made. The majority opinion states that ordinarily the term "year," when used in a statute, is presumed to refer to the calendar year, but that, if the context in which it is used indicates that the legislative intent was otherwise, the term may be construed to mean fiscal year, a period of three hundred and sixty-five days, or twelve months.

There is nothing in the context here requiring a departure from the ordinary meaning of the term. Those who drafted the law must have had in mind the state's general fiscal and tax structure, which provides for the levy of taxes in the early part of October to carry on government in the various taxing districts during the succeeding calendar year. If an excess millage is to be embodied in the October levy, it must be authorized at a special election held before the levy and in the year in which the levy is made. In more than one place in our general statutes the term "fiscal year" is defined, as, for instance, in Rem. Rev. Stat., § 9963 [P. C. § 6617]: "June 30 shall end the fiscal year of school districts and December 31 of all other taxing districts."

Again, Rem. Rev. Stat., § 11242 [P. C. § 6882-81], part of statute governing the levying and collection of taxes, defines the fiscal year as commencing on January 1 and ending on December 31 in each year.

It may be that the construction placed upon the proviso by the majority will, under some conditions, prove more convenient for municipalities holding their gen-

eral elections in December, but we are here concerned with the law as the electors made it, not with a law that should have been made.

I feel constrained to dissent.

STEINERT, C. J., concurs with GERAGHTY, J.