CITY OF LAS VEGAS, etc., Plaintiff,

v.

KITCHELL CONTRACTORS, INC. OF ARIZONA, Defendant.

No. CV–S–91–141–PMP (RJJ).

United States District Court,
D. Nevada.

April 12, 1991.

Roy A. Woofter, Robert S. Sylvain, City Atty., Las Vegas, Nev., for plaintiff.

Kirk Harrison, Kevin Stolworthy, Dereck C. Ence, Jones, Jones, Close & Brown, Las Vegas, Nev., for defendant.

### ORDER

PRO, District Judge.

This case requires the Court to interpret a Nevada statute, Nev.Rev.Stat. § 338.147, entitled "Award of contract to contractor who submits best bid; determination of best bid." The statute reads in part:

1. A public body shall award a contract for a public work to the contractor who submits the best bid.

2. ... [F]or the purposes of this section, a contractor who has:

(a) Been found to be a responsible contractor by the public body; and

(b) *Paid the state and local taxes within this state for 5 successive years before submitting the bid,*

shall be deemed to have submitted a better bid than a competing contractor who has not paid the taxes if the amount of his bid is not more than 5 percent higher than the amount bid by the competing contractor and the bid does not exceed the amount budgeted for the work or the engineer's estimate of the cost of the work, whichever is less.

(Emphasis added).

The Plaintiff City of Las Vegas (the "City") sought bids to expand its misdemeanor detention facility ("Detention Facility Expansion Project"). Bids were submitted and opened on January 8, 1991. Defendant Kitchell Contractors, Inc. of Arizona ("Kitchell") submitted the lowest bid, which was $6,835,800.00. Amicus Curiae Pace Contracting Co. ("Pace") was the next lowest bidder at $7,056,236.00. After reviewing the above bid preference statute, the City sent a letter to Pace which included the following language:

The City Attorney's Office has determined that your bid is the best bid in accordance with the referenced statute, therefore a recommendation to award the contract to your firm will be made at the City Council Meeting scheduled for February 6, 1991.

Pace's Amicus Brief (# 8), Ex. 1 (Letter of January 22, 1991). However, on February 5, 1991, after Kitchell had expressed its disagreement with the award of the contract to Pace, the City Attorney notified counsel for Pace that he would be seeking a declaratory judgment in court rather than recommending that Pace be awarded the contract at that time. Amicus Brief (# 8), Ex. 2 (Letter of February 5, 1991).

■ At its February 6 meeting, the City Council recommended that a declaratory judgment be sought to resolve questions regarding the interpretation of Nev.Rev. Stat. § 338.147. On March 14, 1991, the City filed its Amended Complaint (# 5) and

Motion for Declaratory Judgment (# 6).[1] On March 22, 1991, Pace filed an Amicus Brief in Support of Finding that Kitchell Contractors of Arizona, Inc. Does Not Qualify for a Bid Preference Pursuant to NRS 338.147 ("Pace's Amicus Brief") (# 8). Also on March 22, 1991, Kitchell filed its Memorandum of Points and Authorities in Support of Plaintiff [sic] Kitchell Contractors, Inc. of Arizona's Response to the City of Las Vegas' Motion for Declaratory Relief ("Kitchell's Memorandum") (# 10) together with Exhibits (# 11). On March 27, 1991 Kitchell filed its Memorandum of Points and Authorities in Reply to Pace Contracting Co.'s Amicus Brief ("Kitchell's Reply") (# 15). That same day, Pace filed a Response of Pace Contracting Co. to the Brief of Kitchell Contractors, Inc. of Arizona re Motion for Declaratory Relief ("Pace's Reply") (# 16). Oral argument was heard from all parties on April 2, 1991.

While all parties agree that Pace satisfies the requirement of the statute to receive the bid preference, due to its payment of state and local taxes for five successive years, the dispute here concerns Kitchell's alleged eligibility for this preference. Kitchell alleges that various sales, room, and gasoline taxes it has paid between October 1987 and January 1991 qualify it for the preference. Kitchell further argues that its alleged predecessor paid state and local taxes in Nevada between 1979 and 1983, which qualify it for the preference.

In order to resolve this matter, this Court will examine two questions of interpretation relating to the Nevada preference statute. First, does the statutory language "5 successive years before submitting the bid" mean the five years immediately preceding submission of the bid or five years at any time before the bid is submitted?

Second, does the statutory requirement that taxes be paid in Nevada "for 5 successive years" mean taxes must be paid during a block of sixty months or that taxes must be paid for five successive calendar years running from January 1 to December 31?

■ Turning to the first question, whether the five successive years in which taxes are paid must immediately precede submission of the bid, this Court must first look to the language of the statute. This Court finds that the language used is ambiguous as to what is meant. The Court must, therefore, interpret the statute in light of its legislative history. In a previous case before this Court concerning the same statute, the Honorable Lloyd D. George, United States District Judge, examined the legislative history and noted:

> Both the Assembly and Senate Minutes indicate that the Legislature was concerned about the economic affects [sic] of out-of-state contractors performing in-state projects. The Legislature was also concerned about a contractor taking money and then leaving the state. This would hamper the state's ability to obtain warranty work. Furthermore, the Assembly Minutes indicate that high industrial accident insurance rates hinder Nevada firms by giving out-of-state bidders a cost advantage.

*Aviation Constructors, Inc. v. Clark County, Nevada,* CV–S–90–443 LDG, Order of July 26, 1990, at 4 (Ex. F to Kitchell's Exhibits (# 11)). Judge George later noted:

> The five year requirement tends to demonstrate a permanent and continuing presence in the state. This "presence" factor furthers the goal of benefitting

---

**1.** In seeking this Declaratory Judgment, the City has declined to advocate any position on the interpretation of the statute in question. Rather, it has merely submitted questions to be resolved and remained neutral, preferring to let Kitchell and Pace advocate their respective positions. While this creates an awkward stance for the case, with a Plaintiff refusing to argue the position opposite that of the Defendant, and although the Court cannot give merely advisory Opinions, the factual background indicates that

the City had decided to award the contract to Pace. Thus, there is an actual controversy between the City and Kitchell. It was the threat of litigation by Kitchell that led the City to delay awarding the contract and seek a declaratory judgment, rather than waiting to be sued. This is exactly the purpose of the declaratory judgment device, and this Court properly exerts jurisdiction over this case. *See* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2751 (1983).

residents and the state economy, and fostering warranty work.

*Id.*

■ It does not make sense that a legislature concerned about "a permanent and continuing presence in the state" would require a five year presence at any time in the past. If this were the case, the legislature's goals would be ill-served, and the statute's constitutionality would be questionable. *See Big D. Constr. v. Court of Appeals,* 163 Ariz. 560, 789 P.2d 1061 (1990) (Arizona preference statute declared unconstitutional as violative of the Equal Protection clause in Arizona's Constitution since it ceased to be rationally related to state's legitimate interest). A Court should construe any statute in order to preserve the statute's constitutionality. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981); *Knapp v. Cardwell,* 667 F.2d 1253, 1260 (9th Cir.1982). When read in the context of the goals of the Legislature in drafting the statute, the only reasonable interpretation is that a bidder must have paid state and local taxes for the five successive years immediately preceding the bid.

■ The Court recognizes that this is a conclusion contrary to that of the Nevada Attorney General in an opinion issued April 23, 1990. Ex. C, Kitchell's Exhibits (# 11). In that opinion, the Attorney General concluded that the statute meant "any 5 consecutive years preceding the date the bid is submitted," purporting to rely on the "plain meaning rule" of statutory interpretation. *Id.* at 12. While recognizing that the opinions of the Attorney General should not be lightly rejected, this Court would also note that such opinions are not controlling. *See Wenke v. Hitchcock,* 6 Cal.3d 746, 752, 493 P.2d 1154, 1158, 100 Cal.Rptr. 290, 294 (1972). In this instance, the Court cannot agree that the statute's meaning is clear on its face without the aid of legislative history, and therefore rejects the Attorney General's interpretation. As a result, this Court concludes that any taxes paid between 1979 and 1983 cannot qual-ify Kitchell for a bid preference in 1991 under Nev.Rev.Stat. § 338.147.

This Court must next decide whether the taxes paid between 1987 and 1991 qualify Kitchell for the preference. This can only happen if "5 years" means "5 calendar years running from January 1 to December 31," an interpretation that this Court must reject.

Both parties apparently agree, relying on dictionary definitions, that "year" normally means "calendar year" unless the context indicates otherwise. Pace's Amicus Brief (# 8), at 9–11; Kitchell's Memorandum (# 10), at 22. However, these sources do not explain how calendar year should be interpreted in a given context, but only distinguish a twelve month calendar year from other special years, such as fiscal or academic years. All authorities agree that a calendar year lasts twelve months, *see generally* Annotation, *What 12–Month Period Constitutes "Year" or "Calendar Year" as Used in Public Enactment, Contract, or Other Written Instrument,* 5 A.L.R.3d 584 (1966), but this does not completely resolve all problems of interpretation. While several sources indicate that a calendar year normally refers to the period January 1 to December 31, there are also numerous cases holding that the year may be measured from anniversary to anniversary date when the context indicates that this is the reasonable interpretation. *See, e.g., Southerland v. Bradshaw,* 255 Ga. 455, 339 S.E.2d 579 (1986); *Board of Educ. v. Raubinger,* 78 N.J.Super. 90, 187 A.2d 614 (1963); *Sims v. City of Bremerton,* 190 Wash. 62, 66 P.2d 863 (1937).

Kitchell strenuously argues that this Court should interpret "year" to mean "calendar year", assuming that this means January 1 to December 31. However, one case on which Kitchell heavily relies, does not support this conclusion. In *Cragun v. Nevada Public Employees Retirement Board,* 92 Nev. 202, 547 P.2d 1356 (1976), the Nevada Supreme Court was required to interpret a statute requiring that a party complete "2 years of accredited contributing service" in order to receive survivor benefits. In that case, a school teacher

had been employed from August 24, 1970 until his death on July 13, 1972, and the Court had to decide whether the teacher had satisfied the required term of service to receive survivor benefits. The retirement board argued that a "calendar year" was the correct meaning, indicating that Cragun would not complete those two years until August 24, 1972 and thus he had not qualified. This indicates that "calendar year," as used by the retirement board, as well as the Court, *id.* at 204, 547 P.2d at 1357, meant twelve months running from anniversary to anniversary. Plaintiff, on the other hand, argued that Cragun had completed teaching 2 school years and thus had finished all of the "accredited contributing service" contemplated in a two year period. The Court there held that the completion of two school years satisfied the requirement of the particular statute at issue, although it recognized that this was contrary to rulings in several states requiring completed (anniversary) calendar years in cases involving tenure or employment contracts. *Id.*

■ An analysis of this opinion reveals that the Nevada Supreme Court was deciding between the normal presumption of "calendar year," meaning twelve months from anniversary to anniversary, and academic year. The Nevada Supreme Court was not facing the issue this Court must address, and the *Cragun* decision serves to point out that "calendar year" does not necessarily run from January 1 to December 31. Although the Nevada Attorney General held that "year" meant "calendar year" in the statute now under consideration, that opinion explicitly relied on *Cragun*, Ex. C, at 12, Kitchell's Exhibits (# 11), so this Court still must look at the current statute in the context of the legislative history in order to determine which twelve month periods are meant.

As noted above, this statute was enacted in order to provide a preference to those bidders who demonstrate a "permanent and continuing presence" in Nevada through the payment of taxes for five years. The goal was not to ensure that taxes were paid, but to have the contractor establish a presence here. The legislative history reveals that the statute was amended in committee to extend the required period from two years to five years to demonstrate a presence here even more convincingly. Ex. B, Kitchell's Exhibits (# 11) (Assemblyman Jeffrey seeking to require payment of taxes for "at least five years.") The goal of requiring a presence here indicates that a full five years, or sixty months, is what the Legislature had in mind. If Kitchell's interpretation is adopted, a presence of 3 years, 2 months would satisfy the statute's requirements. This is not the requisite presence laid out by the Legislature.

Moreover, in cases interpreting "years" in the context of measuring time before or after a given event, the majority of decisions

> have construed the term "year" or "calendar year" to mean a period of 12 months commencing at a fixed or designated month which terminated with the day of the corresponding month in the next succeeding year thereafter, rather than a period commencing January 1st and terminating the succeeding December 31.

Annotation, *What 12–Month Period Constitutes "Year" or "Calendar Year" as Used in Public Enactment, Contract, or Other Written Instrument*, 5 A.L.R.3d 584, § 5 at 592 (1966) and cases cited therein. Given that this statute requires taxes to be paid "for 5 successive years *before* submitting the bid," the most reasonable interpretation is that the Legislature meant a period of 60 months terminating with the day the bid was submitted.

■ This Court must, therefore, conclude that Nevada's bid preference statute requires the payment of state and local taxes for a 5 year period counting back from the date the bid is submitted. Even if, as Kitchell asserts, only one state and one local tax need be paid in each year, Kitchell does not satisfy this requirement because the first tax paid by it was only 3 years and 2 months before its bid on this project was submitted. It paid no taxes between January 1986 and January 1987,

and its first tax paid was in October 1987. This is not adequate to qualify for a bid preference on a bid submitted in January 1991.

In light of the Court's resolution of these two issues, all other issues raised regarding the interpretation of Nev.Rev.Stat. § 338.147 need not be addressed. Nothing in this Order should be construed as expressing any opinion of the Court on those issues.

IT IS THEREFORE ORDERED that the City's Motion for Declaratory Judgment (# 6) is granted.

IT IS FURTHER ORDERED that Kitchell does not qualify for a bid preference under Nev.Rev.Stat. § 338.147, and thus the contract for the Detention Facility Expansion Project is properly awarded to Pace.