IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| IN THE MATTER OF THE DETENTION OF:<br><br>ANTHONY RUSHTON | No. 32396-0-III<br><br><br>PUBLISHED OPINION |

FEARING, J. — RCW 71.09.070 requires the state of Washington Department of Social and Health Services (DSHS) to evaluate a sexually violent person's condition at least once every year to determine if continued civil commitment is warranted. This appeal asks: what happens if DSHS violates this obligation? The trial court ordered unconditional release of civil committee Anthony Rushton because of DSHS' failure to conduct an evaluation for more than one year. We reverse and hold that, rather than unconditional release, Rushton's remedy is a motion to compel DSHS to show cause as to whether DSHS should continue to confine him.

FACTS

In 1989, at age fifteen, Anthony Rushton molested twin nine-year-old boys. As a

result of this conduct, Rushton was convicted in juvenile court of first degree rape of a child. In 1994, Rushton stalked and violently raped a seventeen-year-old girl. He followed the girl home and forced his way into her house. Once inside the home, Rushton grabbed the girl, pushed her to the floor, yanked off her clothes, and raped her. As a result of this conduct, Rushton pled guilty to second degree rape and was sentenced to sixty-seven months in incarceration.

Rushton later disclosed more rapes and molestations, beginning as early as his age of eight. His victims included neighborhood children, a teenage girl, and his mother's friend.

Anthony Rushton was released from prison on February 16, 1999. Within weeks, Rushton repeatedly violated his parole by contacting minor children. He admitted that, had he remained in the community, he would have committed a violent rape. He confessed to a polygrapher that he fantasized about violent rapes and that he had "cruised" on several occasions by one high school and two elementary schools while on release. Rushton also disclosed he masturbated, after his cruising, to fantasies of raping preteen girls.

In May 1999, Rushton returned to prison and reentered sexual offender treatment. During treatment, Rushton reported sexual arousal and daily fantasies of physically violent rape of teenage girls. After he began taking an antidepressant, Rushton reported that ninety percent of his sexual fantasies consisted of violent anal rape of his mother.

2

On September 15, 1999, the State of Washington petitioned to civilly commit

Anthony Rushton as a sexually violent predator under chapter 71.09 RCW. On

November 3, 2000, Rushton stipulated to his confinement. The stipulated court order

declared, in part:

> [Rushton] currently suffers from two mental abnormalities,
> Pedophilia, and Paraphilia Not Otherwise Specified (nonconsenting), and a
> personality disorder, Antisocial Personality Disorder. These mental
> abnormalities and personality disorders make him likely to engage in
> predatory acts of sexual violence if Mr. Rushton is not confined in a secure
> facility.

Clerk's Papers (CP) at 12. The order further read that, based on an agreement of the

parties, the stipulation was irrevocable as of its date.

DSHS must evaluate a sexually violent person's condition each year to assess

whether continued confinement is justified. RCW 71.09.070. Between 2001 and 2012, a

qualified expert employed by DSHS yearly evaluated Anthony Rushton. On October 9,

2012, DSHS filed an evaluation for the period from July 2011 to August 2012.

During the calendar year 2013, DSHS failed to perform or file an annual

evaluation of Anthony Rushton. In turn, more than one year passed between the 2012

evaluation and the 2013 evaluation.

Anthony Rushton's case is not the only case, in which DSHS failed to evaluate a

civil committee under chapter 71.09 RCW for more than one year. A January 2013

report from the Washington State Institute for Public Policy described and assessed

3

Washington's civil commitment of sexually violent persons. According to the report, DSHS failed to prepare all 245 annual reviews in 2012 of sexually violent persons. The failure resulted from limited staffing and resources at DSHS' Special Commitment Center.

On February 16, 2014, Harry Hoberman, a qualified expert, completed an evaluation of Anthony Rushton for the period covering August 2012 to September 1, 2013. DSHS filed the report with the superior court on February 28, 2014. According to Dr. Hoberman, Rushton continued to show significant sexual arousal to rape, including sadistic rape of adult females and rape and coercion of minor males and females. Rushton continued to fantasize about anally raping his mother. Hoberman diagnosed Rushton with pedophilia and sexual sadism disorder. Hoberman estimated the odds of Rushton reoffending within the next ten years as sixty-five percent. Hoberman concluded that Anthony Rushton continued to meet the statutory definition of a sexually violent predator.

PROCEDURE

On February 21, 2014, before the filing of Harry Hoberman's report, Anthony Rushton moved the trial court to dismiss his civil commitment as a sexually violent person or, in the alternative, grant him a trial on his commitment based on DSHS' failure to file an annual evaluation. In support of the motion, Rushton asserted the provisions of RCW 71.09.070 and RCW 71.09.090 and the due process clauses of both the state and

federal constitutions. Rushton contended that he should not be harmed by any State budgetary shortfalls that prevented timely reviews. Rushton argued that the remedy for DSHS' failure to timely evaluate him for 2013 is his unconditional release.

In response to Anthony Rushton's motion for release, Steven Marquez, a forensic services manager with the Special Commitment Center, claimed an inability to timely complete Rushton's 2013 evaluation because of a shortage of staff. In a declaration, Marquez testified:

> 2. The loss of two qualified evaluators at the SCC [Special Commitment Center] in 2013 has contributed to delays in annual review reports.
> 3. The pool of potential qualified candidates to fill vacancies in evaluator positions is small, and the difficulties associated with filling vacancies has contributed to delays in annual review reports.
> 4. Approximately two years ago, the Department of Social and Health Services reassigned two Special Commitment Center (SCC) evaluators to Western State Hospital to address the backlog of forensic evaluations at that facility. That reassignment had a significant impact on the SCC's ability to complete annual reviews.
> 5. Due to the staff shortage, Mr. Rushton's evaluation was contracted to an outside evaluator, Dr. Harry Hoberman, Ph.D., in an effort to provide the evaluation to the Court as soon as possible.
> 6. A current evaluation report regarding Mr. Anthony Rushton's status as a Sexually Violent Predator pursuant RCW 71.09.070 was recently completed. The evaluation was based on Dr. Hoberman's report, which is dated February 16, 2014. The completed evaluation was submitted to the Court on February 25, 2014.
> 7. The delay in completing Mr. Rushton's annual review was not the result of neglect or inexcusable delay, but instead because of lack of qualified personnel.

CP at 336-37.

The State of Washington responded to Anthony Rushton's motion for release by arguing it substantially complied with RCW 71.09.070's mandate for review within one year and by denying it violated Rushton's due process rights. The State also argued that Rushton's motion was moot since it filed the 2013 evaluation with the court on February 28, 2014, before the hearing on Rushton's motion. Finally, the State contended that unconditional release was not a proper remedy, since RCW 71.09.090 allowed release of a sexually violent person only if he no longer met the statutory definition of a sexually violent predator. The State emphasized the need to protect the community from a sexually violent person.

The trial court entertained oral argument addressing Anthony Rushton's motion to dismiss. During oral argument, the State's counsel commented "clearly, the statute was not adhered to [by DSHS.]" Report of Proceedings (RP) at 20. Later the State's counsel restated the same remark: "Because I'm telling you, again, with respect to the statute, clearly the statute wasn't followed. Okay." RP at 26-27. The State focused its argument on the remedy available for a violation of the statutory timeline.

The trial court granted Anthony Rushton's motion to dismiss the sexually violent person petition, which dismissal granted unconditional release from confinement. The trial court found that DSHS failed to, at least once a year, perform a current examination of Anthony Rushton's mental condition. The trial court entered the following conclusions of law:

6

2. The issue before the Court deals with a matter of continuing and substantial public interest.

3. Each person committed under RCW 71.09 shall have a current examination of his or her mental condition made by the department of social and health services as least once a year. RCW 71.09.070(1).

4. The use of the word "shall" in RCW 71.09.070(1) means that this provision is mandatory.

5. RCW 71.09 is silent with respect to the remedy if the evaluation is not completed at least once a year.

6. The eventual filing of the 2013 evaluation, at least three months beyond the "at least once a year" requirement, does not preclude this Court's grant of the relief requested by Respondent.

7. The budgetary and/or staffing concerns at the Special Commitment Center outlined on the Declaration of Steven Marquez, Ph.D. do not excuse the lapse of more than one year between evaluations.

8. Respondent's liberty interest is directly affected by a late evaluation to an extent that violates Respondent's due process rights.

9. Petitioner's public safety interest would be significantly impacted if Respondent was released from commitment before final judgment was rendered in this action.

CP at 413.

The trial court stayed the release of Anthony Rushton from confinement. This court further stayed the release pending our decision.

## LAW AND ANALYSIS

In this appeal, we confront the following questions. First, did DSHS timely prepare the yearly evaluation of Anthony Rushton? Second, if not, is dismissal of the confinement and unconditional release an available and proper remedy? In answering the second issue, we identify and evaluate possible remedies for any DSHS violation of time constraints. Before answering either question, we review the sexually violent person

7

commitment statutes in order to identify the policies and concerns expressed by the confinement scheme, which identification will assist us in resolving the two questions.

The 2000 order confining Anthony Rushton in a secured facility read, in part, that the order was irrevocable as of its date. The State does not argue that such language bars Rushton from seeking release from commitment.

*Statutory Overview*

Washington's legislature adopted the "Community Protection Act" of 1990 in response to citizens' concerns about whether state law protected communities from sexually violent offenders. *See* GOVERNOR'S TASK FORCE ON CMTY. PROT. DEP'T OF SOC. & HEALTH SERVICES, FINAL REPORT, I–1 (1989). The impetus for the act was the murder of a Seattle woman by a sexual offender on work release and the violent sexual attack on a young Tacoma boy. GOVERNOR'S TASK FORCE ON CMTY. PROT. at I-1. The Community Protection Act contains fourteen parts dealing with such topics as registration of sex offenders, crime victims' compensation, background checks, and increased penalties for sex offenders. LAWS OF 1990, ch. 3, §§ 1001-13, codified at RCW 71.09, is entitled "Civil Commitment" and is the part of the act we address on this appeal. LAWS OF 1990, ch. 3, §§ 1001-13.

To protect the public, the State may constitutionally confine dangerous individuals who are suffering from mental illnesses or disorders even if the mental condition is untreatable. *Kansas v. Hendricks*, 521 U.S. 346, 390, 117 S. Ct. 2072, 138 L. Ed. 2d 501

8

(1997); *In re Det. of Gaff,* 90 Wn. App. 834, 845, 954 P.2d 943 (1998). Therefore, under RCW 71.09.060, a person determined to be a "sexually violent predator" can be involuntarily committed after he or she serves a sentence for a crime. The legislature enacted extensive findings concerning the need to involuntarily commit violent sexual offenders. Among those findings, the legislature declared:

> In contrast to persons appropriate for civil commitment under chapter 71.05 RCW, sexually violent predators generally have antisocial personality features which are unamenable to existing mental illness treatment modalities and those features render them likely to engage in sexually violent behavior. . . . . The legislature further finds that the prognosis for curing sexually violent offenders is poor, the treatment needs of this population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities. . . .

Former RCW 71.09.010 (1990).

A "sexually violent predator" is someone "who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence." Former RCW 71.09.020(1) (1995). The term "personality disorder" is not defined by the statute, but the act defines the term "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts." Former RCW 71.09.020(2) (1995). "Predatory" acts are those directed at strangers or individuals groomed by the offender for the purpose of victimization. Former RCW 71.09.020(3) (1992).

9

When a person's sentence for a sexually violent offense has expired or is about to expire, the State may file a petition alleging the person to be a sexually violent predator. RCW 71.09.025; .030. When the petition is filed, a judge must determine ex parte if "probable cause exists to believe that the person named in the petition is a sexually violent predator." RCW 71.09.040(1). If the court finds probable cause, DSHS assumes custody of the person and transfers him or her to a facility for evaluation. Within forty-five days, the trial court must conduct a trial to determine if the person is a sexually violent predator. Former RCW 71.09.050(1) (1995). Either party, or the court, may demand a jury trial. The burden is on the State to prove, beyond a reasonable doubt, that the detainee is a sexually violent predator. Former RCW 71.09.060(1) (1995). If so, then he or she shall be committed to a facility "for control, care, and treatment" until he or she is "safe . . . to be at large." Former RCW 71.09.060(1) (1995). The statute limits treatment centers to mental health facilities located within correctional institutions. RCW 71.09.060(3); RCW 10.77.220.

Because a civil commitment is indefinite, the due process requirement that a detainee be mentally ill and dangerous is ongoing. *In re Det. of Moore*, 167 Wn.2d 113, 125 n.3, 216 P.3d 1015 (2009); *In re Det. of Mitchell*, 160 Wn. App. 669, 677, 249 P.3d 662 (2011). Stated differently, a detainee has a constitutional right to liberty if he no longer poses a danger. Therefore, any detainee must be examined annually to determine his or her mental condition and whether he or she continues to meet the standard for

10

commitment. RCW 71.09.070; *In re Det. of Ambers*, 160 Wn.2d 543, 548, 158 P.3d 1144 (2007). DSHS must provide the results of the examination to the trial court that conducted the original commitment hearing, the detainee, and the prosecuting attorney. RCW 71.09.070; *Ambers*, 160 Wn.2d at 548. In addition, the committed person may obtain an additional examination at state expense. RCW 71.09.070.

If DSHS determines that a detainee is no longer mentally ill or dangerous, the secretary must authorize him to petition for release. RCW 71.09.090(1); *Ambers*, 160 Wn.2d at 548. A detainee may also petition the court directly without the approval of DSHS. RCW 71.09.090(2)(a). On filing such a petition, a show cause hearing is held, at which time the petitioner has the right to be represented by appointed counsel, but not the right to be present. RCW 71.09.090(2)(b). If the court, during the show cause hearing, finds probable cause that the detainee is no longer dangerous, the trial court must convene a full evidentiary hearing. RCW 71.09.090(2)(c). Either party may demand a jury trial. RCW 71.09.090(3)(a). At the full trial, the State must prove that the detainee continues to meet the sexually violent person definition beyond a reasonable doubt. RCW 71.09.090(3)(a), (c); *Ambers*, 160 Wn.2d at 548-49; *In re Det. of Cherry*, 166 Wn. App. 70, 76, 271 P.3d 259 (2012).

*Timeliness of 2013 Evaluation*

The State assigns error to the trial court's finding of fact 13 that DSHS failed to conduct a current examination of Anthony Rushton's mental condition at least once a

11

year. This finding may be more of a conclusion of law since the finding parrots statutory language. Also, the State focuses its challenge to the finding more toward whether DSHS violated the statute's requirement of an examination at least once a year rather than toward a chronology of events unencumbered by their legal consequences. The State argues that the term "year" is flexible or, at least, more flexible than the terms "twelve months" or "365 days."

We review whether the trial court's findings of fact are supported by substantial evidence. *In re Foreclosure of Liens*, 123 Wn.2d 197, 202, 867 P.2d 605 (1994); *Tacoma v. State*, 117 Wn.2d 348, 361, 816 P.2d 7 (1991). We assess the trial court's conclusions of law, even if labeled as findings of fact, de novo. *Casterline v. Roberts,* 168 Wn. App. 376, 383, 284 P.3d 743 (2012). On this occasion, we need not resolve whether to review the trial court's finding of fact 13 as a finding or a conclusion because, under either standard of review, we refuse to entertain the assignment of error on the ground of invited error.

RCW 71.09.070(1) controls the timeliness of DSHS' examination of Anthony Rushton  The statute provides:

> (1) Each person committed under this chapter shall have a current examination of his or her mental condition made by the department of social and health services *at least once every year.* The *annual* report shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that would adequately protect the community.

12

> [DSHS] shall file this *periodic report* with the court that committed the person under this chapter. The report shall be in the form of a declaration or certification in compliance with the requirements of RCW 9A.72.085 and shall be prepared by a professionally qualified person as defined by rules adopted by the secretary. A copy of the report shall be served on the prosecuting agency involved in the initial commitment and upon the committed person and his or her counsel.

(Emphasis added.) Subsection (2) of RCW 71.09.070 suspends this annual requirement under specific circumstances:

> (2) During any period of confinement pursuant to a criminal conviction, or for any period of detention awaiting trial on criminal charges, this section is suspended. Upon the return of the person committed under this chapter to the custody of the department, the department shall initiate an examination of the person's mental condition. The examination must comply with the requirements of subsection (1) of this section.

The statute allows for suspension on no other ground. The State does not assert any privilege to suspend the required examinations of Anthony Rushton.

A periodic and timely evaluation of the sexually violent person's mental health condition is critical to the constitutionality of the civil commitment scheme. *State v. McCuistion*, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012), *cert. denied*, 133 S. Ct. 1460 (2013). Civil incarceration that is noncompliant with the process due under the statute which authorizes civil incarceration affects a person's substantial rights, namely depriving basic liberty without the process due by law. *State v. McCuistion*, 174 Wn.2d at 387. Civil commitment statutes are constitutional only when continued confinement is predicated on the individual's mental abnormality and dangerousness. *State v.*

13

*McCuistion*, 174 Wn.2d at 387.

Anthony Rushton argues that the State cannot contend on appeal that its 2013 review of his condition was timely since the contention contravenes its concession to the trial court. We agree. During oral argument before the trial court, the State's counsel twice conceded that DSHS "clearly" violated the time restrictions of the statute. The State limited its argument to the remedy available for a violation of the statutory timeline. We will not permit the State to argue a contrary position before this court. If the trial court committed any error, the State encouraged the error.

Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995). The invited error dogma precludes a party from seeking appellate review of an error it helped create. *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999); *State v. Henderson*, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990). The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996); *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995).

Sound reason exists to apply the invited error rule in this appeal. This case poses many factual and legal questions regarding the timing of the DSHS evaluation, which questions the trial court could and should have addressed but for DSHS' concession. For

example, the 2012 Anthony Rushton examination report spans July 2011 to August 2012, but DSHS did not file the report with the court until October 9, 2012. The 2013 report spans August 2012 to September 1, 2013, but DSHS did not file the report until February 28, 2014. Neither review period coincides with Anthony Rushton's initial confinement date of November 3, 2000, but each ending date precedes November 3 by three months. One wonders if DSHS randomly assigns periods of review to its reports, in part, to avoid the statutory deadline. One wonders if the review periods sometimes exceeds one year. One wonders why the 2013 report has a specific day as its ending period, but other beginning and ending dates only identify the month. One wonders if a competent evaluation for the time frame of August 2012 to September 2013 can be performed in February 2014. One wonders why each evaluation seemingly spans a year and one month, rather than only one year.

RCW 71.09.070 requires an "annual report" "at least once every year." But nothing in chapter 71.09 RCW establishes a precise deadline for the completion or filing of this report. The statutory scheme does not identify a beginning date or an ending date for the year. No court has addressed whether substantial compliance with RCW 71.09.070 is sufficient, and, if so, what constitutes substantial compliance. Without the State's concession in the trial court, Anthony Rushton could have discoursed below on his views of these questions and the learned trial judge could have assisted us in resolving the factual and legal questions.

For purposes of this appeal, we accept the trial court's finding that Anthony

Rushton did not have a current examination of his mental condition at least once a year,

and DSHS completed the 2013 evaluation at least three months tardy. Based on this

finding, we agree with the trial court that DSHS violated the one-year requirement found

in RCW 71.09.070.

The State contends that budgetary restraints excused DSHS' violation of RCW

71.09.070. The State assigns error to the trial court's conclusion that lack of funding did

not pardon DSHS' violation of the mandate. Nevertheless, the State cites no authority for

this argument. RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in

support of the issues presented for review, together with citations to legal authority and

references to relevant parts of the record." We do not consider conclusory arguments that

are unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App.

614, 629, 285 P.3d 187, 194-95 (2012), *review denied*, 176 Wn.2d 1021, 297 P.3d 708

(2013). Passing treatment of an issue or lack of reasoned argument is insufficient to

merit judicial consideration. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d

1200 (2012); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

Therefore, we decline to address this assignment of error.

### Due Process

The State assigns error to the trial court's conclusion of law 8. That conclusion

held that Anthony Rushton possessed a liberty interest in his freedom from confinement

16

and a late evaluation infringed Rushton's due process rights. The State contends that, even assuming a breach of RCW 71.09.070, the violation does not implicate Rushton's constitutional rights to due process.

Anthony Rushton does not challenge the constitutionality of chapter 71.09 RCW. Such challenges have already failed. *See In re Pers. Restraint of Young*, 122 Wn.2d 1, 38-39, 857 P.2d 989 (1993); *State v. McCuistion*, 174 Wn.2d at 398 (2012). On appeal, Rushton concedes the statutory scheme satisfies procedural due process. Instead, Rushton argues that DSHS' failure to comply with that scheme violated his right to due process.

We decline to address whether the untimely examination of Anthony Rushton's mental health condition contravened his right to due process. We have already ruled that DSHS violated RCW 71.09.070, and we must now determine if release from confinement was the correct remedy. As discussed below, characterizing the violation of the statute as also an infringement of a constitutional right adds little to our analysis of the available remedies or remedy.

## *Remedy*

We finally arrive at the important question on appeal. We now review what remedy the trial court should impose when DSHS violates RCW 71.09.070 by failing to evaluate the mental health condition of the sexually violent person and report this condition to the court at least once every year. The State contends that dismissal of the

17

confinement is not the appropriate remedy. The State argues a sexually violent predator can only achieve his unconditional release into the community by showing a substantial change in his condition through treatment under RCW 71.09.090.

Chapter 71.09 RCW expressly identifies no remedy for DSHS' failure to provide a timely annual evaluation. The due process clauses, on which Anthony Rushton relies, also set forth rights, but no remedies. No Washington case has addressed the issue. After reviewing the civil commitment statutory scheme and reading a parallel Wisconsin decision, we conclude that a show cause hearing, not release from confinement, is the proper remedy.

The court's duty in statutory interpretation is to discern and implement the legislature's intent. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). Where the plain language of a statute is unambiguous and legislative intent is apparent, we will not construe the statute otherwise. *Lowy v. PeaceHealth*, 174 Wn.2d at 779. Plain meaning may be gleaned from all that the legislature has said in the statute and related statutes which disclose legislative intent about the provision in question. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

Under RCW 71.09.090, the Washington legislature intended a release only upon a showing of a change in the mental health condition of the sexually violent person. The legislature reaffirmed this intent in a 2005 amendment:

These provisions are intended only to provide a method of revisiting

18

the indefinite commitment due to a relevant change in the person's condition, not an alternate method of collaterally attacking a person's indefinite commitment for reasons unrelated to a change in condition.

LAWS OF 2005, ch. 344, § 1. This legislative intent is bolstered by a portion of RCW 71.09.060(1), which states in part:

> If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the department of social and health services for placement in a secure facility operated by the department of social and health services for control, care, and treatment until such time as: (a) The person's condition has so changed that the person no longer meets the definition of a sexually violent predator; or (b) conditional release to a less restrictive alternative as set forth in RCW 71.09.092 is in the best interest of the person and conditions can be imposed that would adequately protect the community.

One impetus behind the Community Protection Act of 1990 was the early release of a sexually violent person and the tragic homicide that resulted. Therefore, unconditional release of the committee contravenes the intent behind the statutory commitment scheme. Because of this intent, we believe the legislature would have expressly authorized unconditional release as the remedy if the legislature so desired.

The language of RCW 71.09.090 impliedly creates a remedy when DSHS fails to meet its obligation to yearly evaluate the confined sexually violent person. The confined individual may demand a hearing for DSHS to provide evidence of his or her continued qualification as a sexually violent person. If DSHS fails to provide such evidence, usually in the form of the annual review, the confined person will receive a trial on his or her potential release. RCW 71.09.090(2) reads, in relevant part:

19

(2)(a) Nothing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval. . . . If the person does not affirmatively waive the right to petition, the court shall set a show cause hearing to determine whether probable cause exists to warrant a hearing on whether the person's condition has so changed that: (i) He or she no longer meets the definition of a sexually violent predator; or (ii) conditional release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community.

(b) . . . At the show cause hearing, the prosecuting agency shall present prima facie evidence establishing that the committed person continues to meet the definition of a sexually violent predator and that a less restrictive alternative is not in the best interest of the person and conditions cannot be imposed that adequately protect the community. In making this showing, the state may rely exclusively upon the annual report prepared pursuant to RCW 71.09.070. The committed person may present responsive affidavits or declarations to which the state may reply.

(c) If the court at the show cause hearing determines that either: (i) The state has failed to present prima facie evidence that the committed person continues to meet the definition of a sexually violent predator and that no proposed less restrictive alternative is in the best interest of the person and conditions cannot be imposed that would adequately protect the community; or (ii) probable cause exists to believe that the person's condition has so changed that: (A) The person no longer meets the definition of a sexually violent predator; or (B) release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community, then the court shall set a hearing on either or both issues.

Anthony Rushton recognized this remedy when he asked in the alternative, in his motion to dismiss, for a new trial pursuant to RCW 71.09.090.

The State argues against unconditional release by citing to *State ex rel. Marberry v. Macht*, 262 Wis. 2d 720, 665 N.W.2d 155 (2003). The facts in *Marberry* rest in similitude. Wisconsin's Department of Health and Family Services failed to timely

20

evaluate, under a Wisconsin statute, whether William Marberry remained a sexually violent person. The statute required the first evaluation, after confinement, to be within six months and later evaluations every twelve months. The trial court denied Marberry's petition for release, but ordered the department to promptly conduct the reexamination.

In *State ex rel. Marberry v. Macht*, Wisconsin's intermediate appellate court held that the statutory prescribed examination is mandatory and that Marberry was entitled to release from his civil commitment as a remedy. Wisconsin's Supreme Court reversed in a split opinion: three justices joined the lead opinion, three justices joined the concurrence, and one justice did not participate. Even as a split opinion from a foreign jurisdiction, *Marberry* offers persuasive support for the conclusion that unconditional release is not the appropriate remedy for an untimely evaluation. The lead opinion and concurrence disagreed only on an alternative remedy.

The lead opinion, in *State ex rel. Marberry v. Macht*, noted the dual purposes of the civil commitment scheme as protecting society and helping the sexually violent committee with treatment. Releasing a sexually violent person prematurely served neither objective. Release and discharge from commitment for failure to conduct a timely reexamination would jeopardize public safety and contradict the express statutory criteria for supervised release and discharge. The statutory policy of protecting the public outweighed the competing interest of the committed individual in receiving his or her hearing in strict compliance with the statutory time limitations for the reexamination

21

hearing. Like Washington's RCW 71.09.090, a Wisconsin statute rejected discharge while the committee remained a sexually violent person.

The Wisconsin decision recognized a writ of mandamus as a remedy for the State's delay in preparing the periodic evaluation and report concerning the condition of the sexually violent person. Article IV, section 6 of our state constitution gives superior courts the authority to issue writs of mandamus. RCW 7.16.160 implements the constitution and reads:

> [A writ of mandamus] may be issued by any court, except a district or municipal court, to any inferior tribunal, corporation, board or person, *to compel the performance of an act which the law especially enjoins as a duty* resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board or person.

(Emphasis added.) RCW 7.16.170, a related statute, declares:

> The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law.

Pursuant to the latter statute, mandamus lies only when there is practically no other remedy. *Eugster v. City of Spokane*, 118 Wn. App. 383, 414, 76 P.3d 741 (2003). As explained above, Anthony Rushton has another remedy available. Therefore, we conclude a writ of mandamus is not a proper remedy for DSHS' delay in Rushton's case. We do not decide whether or not a writ of mandamus may be an appropriate remedy in another instance of delay by DSHS.

Anthony Rushton highlights cases applying chapter 71.05 RCW, Washington's statutes for civil commitment of the mentally ill, to argue for dismissal as the proper remedy. *In re Detention of Swanson*, 115 Wn.2d 21, 804 P.2d 1 (1990) concerned a 72-hour emergency detention under RCW 71.05.150(2). The *Swanson* Court affirmed the trial court's denial of a motion to dismiss the detention, because the docket, on which the State's petition to detain Swanson was scheduled, began within the prescribed 72-hour period. Nevertheless, the state Supreme Court recognized that: "If Harborview had *totally disregarded* the requirements of the statute or had failed to establish legal grounds for Swanson's commitment, certainly dismissal would have been proper. Indeed, it would have been required." 115 Wn.2d at 31 (emphasis added).

Anthony Rushton relies on *Swanson*'s language of "totally disregarded" to support his argument that he is entitled to release. But *Swanson* is not so broad. The Supreme Court recognized dismissal as the appropriate remedy because former RCW 71.05.210 (1989) expressly provided: "A person who has been detained for seventy-two hours *shall* no later than the end of such period *be released*, unless referred for further care on a voluntary basis, or detained pursuant to court order for further treatment as provided in this chapter." *Swanson*, 115 Wn.2d at 26 (emphasis added).

Chapter 71.09 RCW has no similar statutory analog demanding release because of the failure of DSHS to perform a task. Furthermore, commitment under chapter 71.05 RCW is for a finite term of commitment, not an indefinite one applied to a sexually

violent person under chapter 71.09 RCW.

Anthony Rushton also asks that we uphold the trial court's release of him from confinement on the ground that the trial court held discretion in fashioning a remedy. We decline this request. Generally, we review the authority of a trial court to fashion equitable remedies under the abuse of discretion standard. *In re Foreclosure of Liens*, 123 Wn.2d at 204 (1994). We need not decide whether release from civil confinement is an equitable remedy, because whether release from confinement because of DSHS' delay is an available remedy is a question of statutory construction. The interpretation and construction of a statute is a question of law that an appellate court reviews de novo. *Christenson v. McDuffy*, 93 Wn. App. 177, 179, 968 P.2d 18 (1998). Thus, we do not defer to the trial court's ruling.

On the one hand, we value the trial court's frustration over a history of delay in DSHS' preparing and filing the annual reports critical for continued confinement of a sexually violent person. We also hope that a confined individual will rarely need to initiate the yearly evaluation by petitioning for a show cause hearing. The confined person should not bear the burden of commencing a process assigned to DSHS. On the other hand, unconditional release is a drastic remedy not approved by the legislature and potentially dangerous to the public.

Since the show cause process provides a quick hearing to address DSHS' delay, that process meets due process strictures. The constitutional requirement for revisiting

the basis of commitment is "periodic review." *State v. McCuistion*, 174 Wn.2d at 385 (2012). Substantive due process requires only that the State conduct periodic review of the patient's suitability for release. *Jones v. United States*, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983); *McCuistion*, 174 Wn.2d at 385. DSHS filed its 2013 report one year and four months after its 2012 report. Anthony Rushton cites no direct authority that this extended time period does not meet constitutional muster.

Anthony Rushton also argues that the process due under the constitution is the process provided for in RCW 71.09.070, which demands a yearly evaluation. Nevertheless, Rushton cites no authority for this argument, and statutes may afford more process than demanded by the constitution. A state statute does not expand the boundaries of federal, constitutional due process. *Cf. Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 253 n.13 (5th Cir. 1984); *Atencio v. Bd. of Educ. of Pensaco Indep. Sch. Dist. No. 4*, 658 F.2d 774, 779 (10th Cir. 1981); *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976).

The State of Washington urges this court to reverse and dismiss Anthony Rushton's motion to dismiss as moot, because DSHS cured any statutory or constitutional deficiency when it filed the 2013 report. We agree to vacate the order of dismissal of the petition to confine Anthony Rushton. We note, however, that, because of a delay beyond his control, Rushton never likely explored with an expert whether he remained a sexually

25

violent person subject to confinement. In the meantime, DSHS has filed another report declaring that Rushton qualifies for confinement. On remand, we grant Anthony Rushton ninety days to challenge his confinement by filing a motion to show cause, with supporting affidavits, pursuant to RCW 71.09.090(2). Otherwise, the confinement will continue with the State holding the obligation to examine Rushton and report the results yearly as RCW 71.09.070 requires.

CONCLUSION

We vacate the trial court's order of release and dismissal of the petition to confine Anthony Rushton. We remand to the trial court for further proceedings consistent with this opinion.

Fearing, J.

WE CONCUR:

Siddoway, C.J.

Lawrence-Berrey, J.