IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 34192-5-III |
| | ) | (consolidated with |
| JAMES McMAHAN | ) | No. 34198-4-III, |
| | ) | No. 35236-6-III, |
| | ) | No. 35237-4-III) |
| | ) | |
| In the Matter of the Detention of | ) | |
| | ) | PUBLISHED OPINION |
| SHAWN BOTNER | ) | |
| | ) | |
| | ) | |

PENNELL, J. — Under RCW 71.09.070(1), the Department of Social and Health

Services is required to obtain a mental condition examination of each person committed

as a sexually violent predator (SVP) at least once every year. We are asked to clarify

what the legislature meant by this requirement and what remedies are available for

noncompliance.

Based on the plain language of the statute, we hold the Department is required to finalize a mental condition examination report at least once every calendar year. Should it fail to do so, a detained person's recourse is to demand a show cause hearing. At the show cause hearing, the State may proffer any evidence that would otherwise be admissible, including an untimely examination report. The trial court's rulings to the contrary are reversed.

## BACKGROUND

*James McMahan's first motion*

James McMahan was civilly committed as an SVP on November 7, 2012. On November 25, 2015, Mr. McMahan filed a motion in superior court, alleging the Department had failed to conduct its annual examination of his mental condition as required by RCW 71.09.070. Mr. McMahan's motion requested a show cause hearing regarding his continued detention under RCW 71.09.090(2)(a).

In brief, RCW 71.09.090(2)(a) permits a committed person to ask for a preliminary, "show cause" hearing to assess the possibility of a full evidentiary hearing regarding the person's continued eligibility for detention as an SVP. At the preliminary hearing, the State is burdened with presenting prima facie evidence supporting continued detention. RCW 71.09.090(2)(b). This burden may be satisfied by reliance on an annual

report prepared pursuant to RCW 71.09.070. *Id.* If the State fails to meet its burden, or if there is probable cause to believe the committed person's mental condition has changed such that the criteria for detention are no longer met, the matter must be set for a full hearing. RCW 71.09.090(2)(c). If the State satisfies its burden, no further proceedings are warranted.

As part of his arguments to the trial court, Mr. McMahan demanded the State be prohibited from satisfying its burden of proof at the show cause hearing through use of an untimely annual examination report. Although the State had obtained a report that recommended continued SVP detention shortly after Mr. McMahan filed his initial motion, Mr. McMahan argued the court should exclude the report from evidence as a penalty for missing its deadline.

The trial court agreed with Mr. McMahan. Because the Department had not completed Mr. McMahan's examination within one year of his commitment anniversary date, the trial court found the most recent report untimely. As a sanction for this deficiency, the court excluded evidence of the report from Mr. McMahan's show cause hearing. Without the information from the report, the trial court determined the State had failed its show cause obligation. Thus, the court ordered a trial on the merits regarding whether Mr. McMahan should be released from commitment.

3

*Shawn Botner's first motion*

Shawn Botner was committed as a sexually violent predator on November 17, 2014. On December 23, 2015, the Department completed an initial examination report that concluded Mr. Botner continued to meet the criteria for SVP detention. Despite the report's adverse recommendation, Mr. Botner filed a motion for a show cause hearing under RCW 71.09.090(2)(a). Mr. Botner argued that because the Department's examination report was not issued within one year of his commitment date, it was untimely and should be excluded from evidence at his show cause hearing. The trial court agreed with Mr. Botner and issued the same ruling in his case as was issued for Mr. McMahan. Specifically, the trial court granted Mr. Botner's show cause motion, excluded the examination report from evidence at the show cause hearing, and ordered a release trial.

*Subsequent proceedings and motions*

Prior to the release trials, the State obtained discretionary review from our court and stays of execution. During the pendency of the stays, the Department completed additional examination reports pertaining to McMahan and Botner. Mr. McMahan's report was completed on December 8, 2016. Mr. Botner's report was completed on November 28, 2016. Both reports found a continued basis for SVP detention.

4

In December 2016, McMahan and Botner each filed a second motion to show cause. They again argued the Department failed to meet the statutory one-year deadline for their examinations. Utilizing the anniversary date of the two men's original orders of commitment as a reference point, the trial court agreed and found the examination reports untimely. The court then excluded the reports from consideration at each show cause hearing and scheduled full evidentiary hearings for both men.

After the trial court's second set of rulings, the State again sought discretionary review and requested stays of all scheduled evidentiary hearings. These requests were granted and all four cases pertaining to McMahan and Botner have been consolidated for review in this appeal.

## ANALYSIS

"Each person committed [as an SVP] shall have a current examination of his or her mental condition made by the department at least once every year." RCW 71.09.070(1). This appeal presents questions over what constitutes a "year;" what must be done within the yearly period; and when compliance with the yearly deadline should be measured. We are also asked what remedies are available if these obligations are not met. The questions posed turn on statutory interpretation, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

5

*The statutory requirement of an examination at least once every year*

The fundamental goal of statutory interpretation is to discern the legislature's intent. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). The best evidence of this intent is a statute's language. *Id.* If a statute is plain on its face, we look no further and do not engage in statutory construction. However, as part of assessing whether or not a statute's meaning is plain on its face, we may look to the statute's context and related provisions. *Campbell & Gwinn*, 146 Wn.2d at 11. We may also consult dictionaries to assess the meaning of terms left undefined by the legislature. *Cornu-Labat v. Hosp. Dist. No. 2*, 177 Wn.2d 221, 231, 298 P.3d 741 (2013). If, after this close scrutiny, a statute's terms are only amenable to one reasonable interpretation, the statute must be declared unambiguous and we will give it that effect. *Gorre v. City of Tacoma*, 184 Wn.2d 30, 42, 357 P.3d 625 (2015).

The parties raise three questions regarding what the legislature meant by RCW 71.09.070(1)'s requirement that the Department make an examination of a committed person's mental condition at least once every year:

1.     What is meant by the word year?

2.     What must be done to satisfy the requirement that an examination be made at least once every year?

3.     What action date should be utilized to determine the Department's

6

compliance with its yearly examination obligation?

All three questions can be answered by careful review of the statute's plain language.

*What constitutes a year?*

Neither the SVP statute nor the Revised Code of Washington define what is meant by the term "year." This lack of explicit definition has prompted debate over whether the term means anniversary year or calendar year. If the term refers to anniversary year, this leads to dispute over which anniversary is intended. Is it the anniversary of the committed person's SVP determination or the anniversary of the person's last mental condition examination?

The inquiry need not be so complicated. In common parlance the term "year" refers to a cycle in the Gregorian calendar of 365 or 366 days, divided into 12 months, beginning with January and ending with December. *Webster's Third New International Dictionary* 2648 (1993); 74 AM. JUR. 2D *Time* § 7 (2012). In contrast, "[t]he term 'preceding year' or 'year preceding' . . . signifies a 12-month anniversary-to-anniversary period." 74 AM. JUR. 2D *Time* § 7, at 626. By using the generic term "year," instead of "anniversary year" or some form of "preceding year," the legislature indicated its intent that the Department only complete an examination at least once every calendar year.

Had the legislature intended "year" to mean anniversary year, it would have used clarifying language similar to that set forth in RCW 71.09.070(7), which sets an anniversary year deadline in special circumstances.[1] Because the language used in subsection (1) is substantially different than what is contained in subsection (7), it is apparent the legislature intended different meanings. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007).

Reviewing the term "every year" in both isolation and context, it is reasonably apparent the legislature intended the State have some leeway[2] in choosing the precise timing of a committed person's annual examination, so long as an examination takes place at least once every calendar year. Such leeway does not lead to untenable results. Requiring the Department to conduct examinations once every calendar year enables it to

---

[1] Subsection (7) sets a special anniversary deadline for an initial examination that takes place once an individual has been ordered recommitted after an unconditional release trial. In this unique circumstance, the Department's examination deadline is one year after entry of the recommitment order.

[2] Such leeway appears to play an important role in the Department's current examination practices. According to a 2013 report submitted in the record for this case, a team of seven individuals work to perform a majority of the annual SVP reviews. ROXANNE LIEB ET AL., WASH. STATE INST. FOR PUB. POLICY, SPECIAL COMMITMENT CENTER FOR SEXUALLY VIOLENT PREDATORS: POTENTIAL PATHS TOWARD LESS RESTRICTIVE ALTERNATIVES 14 (Jan. 2013); Clerk's Papers (CP) at 283. In 2012, the team was responsible for producing 245 annual reviews. CP at 285. The team has a performance goal of producing 25 percent of the annual reviews each quarter. *Id.*

evenly spread its work out over the course of the year and maximize staff efficiencies.[3]

Were the Department required to use an anniversary deadline, examination due dates

would be scattered unevenly for reasons outside the Department's control, making the

Department's work more difficult than it is already. In addition, the Department need not

be overly concerned about how to handle an initial yearly examination if an individual is

adjudicated an SVP late in the calendar year. As explained below, the only remedy for a

late examination is a show cause hearing. At the show cause hearing, the State is free to

present evidence of a detained person's recent SVP determination and supporting

documentation. RCW 71.09.090(3)(c), (d) (evidence of prior commitment trial and

disposition admissible). Thus, for persons adjudicated as SVPs late in the year, the State

can generally use the SVP determination to comply with its annual examination

obligation.

*What must be done for yearly compliance?*

In its briefing, the State suggests the Department can satisfy its yearly examination

obligations by conducting some portion of a mental examination each year. We disagree.

---

[3] Certainly the Department could conduct itself in a disorganized fashion and leave large numbers of examinations for December each year. But this would be a problem in its own control, not one subject to the whims of trial court SVP adjudications.

Although RCW 71.09.070(1) only refers to making a mental condition "examination" at least once every year, the ensuing subsection states that the evaluator conducting the examination must prepare a "report." RCW 71.09.070(2). Through this language, the legislature made plain that an evaluator's examination duties include preparation of a report. Accordingly, the statutory scheme as a whole clarifies that the duty on the Department's evaluator is to finalize an examination report at least once every calendar year. Mere progress toward a report is insufficient.

*What date is used to judge compliance?*

The parties' final dispute regarding RCW 71.09.070(1) is over what date should be used to determine yearly compliance. Is an examination report timely so long as it is completed within each calendar year? Or must the examination report be shared with the court or the detained person by the end of the yearly deadline?

The plain statutory language favors the former interpretation. The yearly deadline specified in RCW 71.09.070(1) only pertains to the Department's obligation to conduct an examination, including writing a final report. The statute does not set any deadlines for filing the report with the court or providing a copy to the committed person. RCW 71.09.070(5). Given this language, it is apparent the Department's compliance

10

with the statutes's yearly deadline must be measured by the date of its annual examination report, not the date of circulation.

*The Department satisfied the statutory criteria*

The Department completed mental condition examination reports for McMahan and Botner at least once during each of the calendar years at issue in this litigation. This satisfied the plain terms of RCW 71.09.070(1). The examinations also adequately protected McMahan and Botner's constitutional rights to periodic review of the grounds for their commitment. *See State v. McCuistion*, 174 Wn.2d 369, 385, 275 P.3d 1092 (2012). The trial court's orders rejecting the Department's examination reports as untimely are reversed.

*Potential remedies*

Because the State satisfied its yearly obligations under RCW 71.09.070, there is no need to address the issue of remedies. However, given the possibility this issue may arise in the future, we opt to provide clarification.

The duty to procure a yearly examination report is grounded in statute, RCW 71.09.070. Although an individual cannot be committed as an SVP without an underlying court hearing, the yearly report obligation exists independent of any court order or active judicial proceedings. Accordingly, the broad discretion enjoyed by courts

11

to enforce rules and orders during the course of litigation (*see* CR 37 (discovery sanctions); RCW 2.28.010 (disruption of court proceedings); and chapter 7.21 RCW (contempt of court)), does not apply to a violation of RCW 71.09.070.

Because the duty to procure a yearly report is based on statute, rather than a court order, we must look to legislative guidance for the applicable remedy. We previously engaged in this exercise in *In re Detention of Rushton*, 190 Wn. App. 358, 375, 359 P.3d 935 (2015). As explained in *Rushton*, the remedy for a report violation under RCW 71.09.070 is a show cause hearing. *Id.* No further equitable remedies apply. *Id.*

The trial court abused its discretion in imposing an evidentiary penalty in addition to the statutory remedy of a show cause hearing. As set forth in *Rushton*, a show cause hearing is adequate to address any harm caused by an untimely mental condition examination. *Id.* at 380-81. After all, the purpose of an annual examination is to assess whether a committed person continues to meet the criteria for SVP detention. *Id.* By demanding a show cause hearing, a committed person is empowered to ensure an updated review of his or her circumstances. Indeed, as was true in this case, the mere request for a show cause hearing will likely prompt the Department to finalize a current mental condition report. Excluding an untimely mental condition report from a show cause hearing does nothing to assist in the determination of whether a committed person should

12

No. 34192-5-III; 34198-4-III; 35236-6-III; 35237-4-III
*In re Det. of McMahan*

remain in detention. It is not an available remedy for a statutory violation of RCW 71.09.070(1).[4]

## CONCLUSION

RCW 71.09.070(1) requires the Department to complete an examination report of a committed person's mental condition at least once each calendar year. The examination reports at issue in this appeal met this standard. We therefore reverse the trial court's rulings setting release trials or evidentiary hearings for McMahan and Botner and remand for further proceedings, consistent with this opinion.

_____
Pennell, J.

I CONCUR:

_____
Lawrence-Berrey, A.C.J.

---

[4] Because the strict requirement of a yearly examination report is statutory, not constitutional, we do not address what remedies might apply if the Department not only failed to procure a yearly report but also failed to comport with the broader constitutional duty of periodically reviewing the basis for a committed person's detention.

13

Nos. 34192-5-III consolidated with 34198-4-III, 35236-6-III and 35237-4-III

FEARING, C.J. (concurrence) — I disagree with the majority's conclusion as to what constitutes a "year" for purposes of RCW 71.09.070(1). The statute reads:

> Each person committed [as an sexually violent predator] shall have a current examination of his or her mental condition made by the department *at least once every year*.

(Emphasis added.) The statute does not declare what constitutes a "year." None of the language or legislative history compels a conclusion that the legislature intended a calendar year.

Constructions that yield unlikely, absurd, or strained consequences must be avoided. *City of Seattle v. Fuller*, 177 Wn.2d 263, 270, 300 P.3d 340 (2013). The majority's interpretation of the word "year" as a calendar year leads to some unreasonable results. If the committee enters treatment on December 23, the Department of Social and Health Services (DSHS) must complete a "current examination" before December 31 of the same year. Perhaps an examination conducted before the

commitment suffices, but the statute does not so read. More importantly, if the committee enters treatment on January 2, DSHS, under the majority's construction of the term "year," would have until December 31 of the following calendar year to complete the "current examination." In other words, a year becomes one year and 363 days. The more reasonable construction of RCW 71.09.070 is to impose the obligation of an examination within the one-year anniversary of the commitment and each anniversary thereafter.

The majority's construction of the word "year" also could result in DSHS completing examinations of all committees during the month of December of each year. The superior courts in turn would encounter the obligation of reviewing stacks of examination reports during the season of good will. If DSHS does not fulfill the one-year deadline, the use of a calendar year could also result in scores of show cause hearings scheduled in January of each year. DSHS could impose its own staggered internal deadlines for reports in various cases throughout the calendar year, but many individuals' and organizations' work flows stagnate until a real deadline approaches. DSHS signals that it lacks the resources to timely complete all of its reports, which confirms the likelihood that superior courts will face numerous show cause hearings in January. In short, the legislature likely intended, to the contrary, that deadlines for examinations be staggered throughout the calendar year.

The word "year" may be flexible in meaning in accordance with the statutory context in which it is used. *McKee v. Commission on Professional Competence*, 114 Cal.

2

App. 3d 718, 723, 171 Cal. Rptr. 81 (1981); 74 AM. JUR. 2D *Time* § 7 (2012). When, from the context of a statute, it appears a meaning of the term "year" as calendar year is intended, that other meaning will be applied. *Southerland v. Bradshaw*, 255 Ga. 455, 339 S.E.2d 579, 580 (1986). In *Southerland v. Bradshaw*, the Georgia court held that a year, for purposes of imposing a premium payable upon redemption of property from sale for taxes applied to each twelve-month year or fraction thereof began to run at the date of tax sale, rather than to each fraction of each calendar year following date of tax sale.

Closer to home and in *Sims v. City of Bremerton*, 190 Wash. 62, 66 P.2d 863 (1937), our Supreme Court addressed the meaning of the word "year" in a statute that allowed a city to tax above the maximum rate if a three-fifths majority of voters at a special election, conducted "in the year in which the levy is made," approve. *Sims v. City of Bremerton*, 190 Wash. at 63. The court held, in light of the statutory purpose, the term "year" to refer to a period of three-hundred and sixty five days, not a calendar year.

The majority cites 74 AM. JUR. 2D *Time* § 7 (2012) for the proposition that a "year" generally means a "calendar year." This American Jurisprudence section cites *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994); *Finch v. Fitzpatrick*, 254 So. 2d 203 (Fla. 1971); *State ex rel. Gareau v. Stillman*, 18 Ohio St. 2d 63, 247 N.E.2d 461 (1969); and *Clopton v. Scharrenberg*, 106 Cal. App. 2d 430, 235 P.2d 84 (1951) for this proposition. Nevertheless, the *Hirsch* decision relied on Nebraska's statute of general application that defined "year" as a "calendar year." NEB. REV. STAT. § 49-801. Washington lacks such a definitional statute. *Finch v. Fitzpatrick* and *Gareau v. Stillman*

3

also construed a respective state statute that mentioned a "calendar year." Former FLA. STAT. ANN. § 27.14 (1996); OHIO REV. CODE ANN. § 3513.191. *Clopton v. Scharrenberg* relied on a military rule that referenced a "calendar year."

The majority scores a legitimate point when mentioning that subsection (7), another segment of RCW 71.09.070, references an examination "no later than one year after the date of the order finding the individual continues to be a sexually violent predator." Subsection (1), at issue in this appeal, omits any designation of an event from which to measure the one year. Nevertheless, subsection (7) may evidence an intent of the legislature to demand an examination quicker than one year and 363 days from the last examination as the majority allows.

I otherwise concur in the remainder of the majority's decision.

_Fearing, J._

Fearing, C.J.

4