**FILED**
**MARCH 31, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 36621-9-III |
| | ) | (consolidated w/ |
| A.L.K. | ) | No. 36622-7-III, |
| _____ | ) | No. 36623-5-III) |
| | ) | |
| In the Matter of the Dependency of: | ) | |
| | ) | |
| D.B.C.K.-S. | ) | |
| _____ | ) | UNPUBLISHED OPINION |
| | ) | |
| In the Matter of the Dependency of: | ) | |
| | ) | |
| L.R.C.K.-S. | ) | |
| | ) | |

PENNELL, C.J. — L.K. appeals orders of dependency regarding her three children, arguing that they were issued in violation of the federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and the Washington State Indian Child Welfare Act (WICWA), chapter 13.38 RCW. We affirm.

FACTS

L.K. has a long history with the Department of Children, Youth, and Families,[1] largely stemming from methamphetamine abuse. For several months during 2013 and 2014, and then in 2017 and 2018, the Department engaged L.K. in Family Voluntary Services (FVS). L.K. was offered a variety of services including: urinalysis testing, mental health counseling, child care, bus passes, fuel vouchers, an alcohol evaluation and assistance with housing and basic necessities. L.K.'s response to FVS services was mixed. She took advantage of housing and other assistance, and participated in parenting classes and mental health counseling. But she largely refused to engage in urinalysis testing. The Department closed L.K.'s first FVS case after she declined further services.

L.K.'s final round of FVS services ended in March 2018 when all available services had either been completed or rejected by L.K. At around that point, L.K. and her three young children were living at the Moonlight Motor Lodge in Wenatchee. According to the lodge manager, L.K.'s circumstances were problematic. L.K. and her children were living in filth, there were questionable people coming in and out of L.K.'s unit, and L.K. often appeared incoherent. The manager did not report L.K. to

---

[1] Formerly the Department of Social & Health Services.

the Department. Instead, L.K. was evicted from the Moonlight Motor Lodge for nonpayment of rent.

L.K. and her children subsequently moved into the home of an acquaintance. The acquaintance alleged L.K. was frequently gone all night and slept during the day, leaving her to care for L.K.'s children and provide them basic necessities. Eventually, the acquaintance reported L.K. to the Department.

The Department took L.K.'s three children into protective custody. Dependency petitions were filed on August 17, 2018, alleging L.K. had failed "to provide appropriate housing" and "consistent care for the children . . . leaving them either unattended or with other caregivers for several hours to days at a time." Sealed Clerk's Papers at 5. The Department also contended L.K. was using methamphetamine.

At the shelter care hearing, the juvenile court inquired as to potential American Indian or Alaska Native heritage in accordance with ICWA and WICWA. L.K.'s two younger children were known to be affiliated, through their father, with the Northern Arapaho Tribe of the Wind River Reservation, Wyoming. However, both L.K. and the father of L.K.'s oldest child (a different father than that of the younger children) reported no known Native heritage. The juvenile court found the Department had made a good faith effort to determine whether the oldest child was an Indian Child and that ICWA and WICWA did not apply to the proceeding.

3

Shortly after the shelter care hearing, the paternal grandmother of L.K.'s oldest child informed a Department social worker there was "some Native heritage." Sealed Report of Proceedings (Jan. 31, 2019) at 217. The Department purportedly sent an inquiry to the tribe in question. The record on review does not reveal the outcome of this investigation.

After her children were placed in protective custody, L.K. informed the Department she was drug free and not in need of services. L.K. claimed the allegations against her were lies and she refused to engage in any services other than visitation.

A dependency fact-finding hearing was held in early 2019. The Department presented testimony consistent with the foregoing summary. A representative of the Northern Arapaho Tribe also appeared in relation to L.K.'s two youngest children. The representative concurred in the Department's recommendation for out-of-home placement.

L.K. testified twice during the fact-finding hearing. She denied the statements made by the Moonlight Motor Lodge manager and her acquaintance/landlady. According to L.K., the allegations against her were all lies. L.K. claimed she had "completed successfully" all of her prior voluntary services. *Id.* at 20. Given her perceptions of past success and injustice regarding the current allegations, L.K. insisted she would not

4

participate in any further testing or services, other than visitation, until she received a "fair report" from the Department. *Id.*

L.K.'s attorney echoed L.K.'s testimony in legal argument. Counsel claimed there was no reason to remove L.K.'s children from her care. L.K.'s attorney asserted L.K. did not have a drug problem, she had a place she could live with her children, and L.K. had not committed abandonment or mistreatment. Counsel never claimed the Department was failing its obligations under ICWA and WICWA.

The juvenile court was not persuaded by L.K.'s position. The court found L.K.'s three children dependent under RCW 13.34.030(6)(c) (no parent capable of care). The court also determined the Department had made active efforts to prevent the breakup of L.K.'s family under ICWA and WICWA, largely based on interventions made during the pre-petition FVS interventions.

L.K. timely appeals.[2]

## ANALYSIS

*Indian child status of L.K.'s oldest child.*

Application of ICWA and WICA turn on whether a child placed in foster care meets the definition of an "Indian child." An Indian child is one who is either "(a) [a]

---

[2] The fathers of L.K.'s children were part of the dependency proceeding, but neither is a party on appeal.

member of an Indian tribe; or (b) eligible for membership in an Indian tribe and is the

biological child of a member of an Indian tribe." RCW 13.38.040(7). If there is "reason

to know" a child may be an Indian child, the juvenile court must treat the child as such

pending final determination. 25 C.F.R. § 23.107(b)(2).

Federal regulations outline six circumstances that provide a "reason to know" a

child is an Indian child.[3] The six circumstances all contemplate evidence beyond mere

speculation. A family member's assertion that a child has Indian heritage does not, by

---

[3] The circumstances are:

> (1) Any participant in the proceeding, officer of the court involved
> in the proceeding, Indian Tribe, Indian organization, or agency
> informs the court that the child is an Indian child;
> (2) Any participant in the proceeding, officer of the court involved
> in the proceeding, Indian Tribe, Indian organization, or agency
> informs the court that it has discovered information indicating that
> the child is an Indian child;
> (3) The child who is the subject of the proceeding gives the court
> reason to know he or she is an Indian child;
> (4) The court is informed that the domicile or residence of the child,
> the child's parent, or the child's Indian custodian is on a reservation
> or in an Alaska Native village;
> (5) The court is informed that the child is or has been a ward of
> Tribal court; or
> (6) The court is informed that either parent or the child possesses an
> identification card indicating membership in an Indian Tribe.

25 C.F.R. § 23.107(c).

itself, supply a "reason to know" a child is an Indian child. *In re Dependency of Z.J.G.*, 10 Wn. App. 2d 446, 449, 448 P.3d 175 (2019). Rather, "[a]n assertion of Indian heritage" merely "triggers the Department's duty to investigate" pursuant to RCW 13.38.050 and WAC 110-110-0030(1). *Dependency of Z.J.G.*, 10 Wn. App. 2d at 468.

The information here failed to provide the juvenile court a reason to know L.K.'s oldest child qualified as an Indian child. Both parents denied tribal heritage and none of the circumstances set forth at 25 C.F.R. § 23.107(c) were present. While the paternal grandmother claimed some Native American heritage, this merely triggered the Department's duty to investigate; it did not oblige the juvenile court to treat L.K.'s oldest child as an Indian child.[4] Because the record before the juvenile court did not provide a reason to know L.K.'s oldest child was an Indian child, ICWA and WICWA did not apply to the court's dependency order. L.K.'s arguments for reversal are therefore unfounded.

Although the record does not indicate any legal reason to know L.K.'s oldest child is an Indian child, the State concedes that the details of the Department's ICWA and WICWA investigation should be placed on the record. This concession is well taken.

---

[4] Citing 25 C.F.R. § 23.107, L.K. claims the Department was required to make a record of its investigative efforts. We disagree. The federal regulation refers only to the "reason to know" standard. It does not address the Department's separate duty to make a good faith investigative effort. RCW 13.38.050; WAC 110-110-0030(1).

7

Under RCW 13.38.070(4)(a), the juvenile court may reassess the issue of Indian child status at any time during the pendency of a dependency proceeding. Given the arguments raised on appeal, such reassessment would be prudent in the case of L.K.'s oldest child. However, remand on this point is unnecessary. Reassessment can take place during the normal course of the dependency proceedings.

*Active efforts*

Unlike the oldest child, each of L.K.'s two younger children meet the definition of an Indian child, thus triggering the procedural and substantive protections of ICWA and WICWA. Important here, ICWA and WICWA require the Department to engage L.K. in active efforts at family preservation. 25 U.S.C. § 1912(d); RCW 13.38.130(1). Such efforts must be timely. 25 C.F.R. § 23.2; RCW 13.38.040(1)(a). They must also amount to more than "simply providing referrals" to services. RCW 13.38.040(a)(i)-(ii).

L.K. contends the Department failed to meet its obligation to make timely active efforts at family preservation. L.K. does not challenge the adequacy of the Department's pre-petition FVS intervention efforts. Instead, L.K. argues the Department fell short when it failed to actively provide services during the time period between the placement of L.K.'s children in protective custody and the fact-finding hearing.

We decline to reach the merits of L.K.'s arguments as they are precluded by invited error. "Under the doctrine of invited error, a party may not materially contribute

8

to an erroneous application of law [in the trial court] and then complain of it on appeal."

*In re Det. of Rushton*, 190 Wn. App. 358, 372, 359 P.3d 935 (2015). An invited error is

distinct from one that is merely unpreserved. Under RAP 2.5(a), certain types of errors

may be claimed for the first time on appeal, despite lack of preservation in the trial court.

But RAP 2.5(a)'s generous stance toward unpreserved error does not apply to invited

errors. *See State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990). When a

party does not simply fail to object, but instead actually induces the trial court to commit

an error, appellate review is waived. *Id*.

L.K.'s posture in the juvenile court precluded her from arguing on appeal that the

Department failed to make sufficient efforts at family preservation. From the time L.K.'s

children were placed in protective custody, up until the fact-finding hearing, L.K. was

adamant the Department had provided all necessary services and her children should be

returned to her care without further intervention. According to L.K., the allegations

against her were all lies. As such, she threw down the gauntlet and refused to participate

in any services or testing, other than visitation. The stance L.K. chose to take in the

juvenile court may have been reasonable, even if unsuccessful. But it had consequences.

L.K.'s claim that the Department failed to provide active efforts at family reunification

fails under the doctrine of invited error.

Nos. 36621-9-III; 36622-7-III; 36623-5-III
*In re Dependency of A.L.K.*

CONCLUSION

The orders of dependency are affirmed. At the next review hearing, the juvenile court shall elicit evidence regarding the Department's investigation of the Indian child status of L.K.'s oldest child. The court shall also make an explicit notation of whether that child meets the definition an Indian child.[5]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Andrus, J.[6]

---

[5] The juvenile court's dependency order does not specifically note the Indian child status of L.K.'s oldest child. This appears to be a clerical omission that should be corrected.

[6] The Honorable Beth Andrus is a Court of Appeals, Division One, judge sitting in Division Three under CAR 21(a).

10